THE CITY OF LIVINGSTON RESPONDENT, *v.* FRANK T. WOODS ET AL., APPELLANTS.

[Submitted June 16, 1897. Decided June 30, 1897.]

*Official Bonds, Liability On.*

1. A City Treasurer, who is obliged by law of the state and an ordinance of the city to keep the funds of the city on deposit, is not liable for a loss occasioned by a failure of the bank in which he had deposited the money, if he used reasonable prudence and caution in selecting the bank, and was without fault or negligence in keeping his deposit.

2. In an action against a City Treasurer and his bondsmen for the breach of his official bond in that he did not "deliver over to his successor all money * * * belonging to

the city held by him," an answer which sets forth facts showing that his failure so to do was caused by the suspension of the bank in which he had the funds on deposit, and that he had used all reasonable care in the selection of the bank, and was free from any fault or negligence in keeping therein, is not subject to a demurrer, but states facts, which if true, constitute a good defense.

*Appeal from District Court, Park County.    Frank Henry, Judge.*

ACTION by the City of Livingston against Frank T. Woods and others to recover upon an official bond. From a judgment for plaintiff, defendants appeal. Reversed.

Statement of the case by the justice delivering the opinion.

The defendant Frank T. Woods, at the time this action was commenced, and prior thereto, was the Treasurer of the City of Livingston. The other defendants were sureties on his official bond. This action is on the official bond of Woods to collect the sum of $756.50, which it is alleged in the complaint he failed, in violation of the terms and conditions of his bond to pay over to his successor in office. The bond contains the following conditions :

"Now, therefore, if the said Frank T. Woods shall well, truly, and faithfully perform all official duties now required of him by law, and shall truly and faithfully execute and perform all the duties of such office of City Treasurer required by any law to be enacted subsequently to the execution of this bond, then this obligation to be void and of no effect; otherwise, to remain in full force and virtue."

The answer denies that the defendant Woods did not well, truly, and faithfully perform the duties of his office required of him by the laws in force at the time of his election, or those enacted subsequent to the execution of said bond.

The defendants then allege that on the 1st day of May, 1893, when defendant Woods entered upon the duties of his office of City Treasurer of the City of Livingston, the moneys belonging to the City of Livingston, in the hands of his predecessor, were on deposit in the Livingston National Bank, a bank doing business in the City of Livingston; that said bank

had been used for more than a year prior thereto as the depository for the moneys in the hands of the City Treasurer; that, upon his assuming the duties of the office of City Treasurer, the said Woods continued to keep the moneys on deposit in said bank; that he was required by an ordinance of the city to deposit said moneys.    Said ordinance reads as follows :

"The City Treasurer, acting as city collector, shall receive all moneys belonging to the city, and shall deposit all moneys in his own name as treasurer."

The said ordinance further required the City Treasurer to keep a correct account of all moneys belonging to the city, and that his books should be kept in such a manner as to correctly present the condition of the city finances, and be at all times subject to the inspection or examination of the mayor and council, or any member thereof.

The defendants further allege that, subsequent to assuming the duties of said office, he, as City Treasurer, filed with the City Council of the City of Livingston his report, showing the amount of money which was deposited in the Livingston National Bank, which report was approved by the Board of Aldermen of the city for the months of June and July, 1893, and that at all times prior to the 7th day of July, 1893, the Livingston National Bank was considered by the business men and the people of the City of Livingston and vicinity thereof to be a responsible and solvent banking institution, and that he (the said Frank T. Woods) used all the precaution that was necessary or required of him by law in the selection of the Livingston National Bank as a depository for the city money; that on the 7th day of July, 1893, the said Livingston National Bank suspended operations, and became insolvent, and on the 20th day of July, 1893, passed into the hands of a receiver, and has ever since been in the hands of a receiver, in process of settlement; that, on the day the bank suspended, he had on deposit in said bank, in his name, as treasurer of the city, the sum of $1,513; that thereafter he (the said Woods), as City Treasurer, filed his claim with the receiver of said bank for the moneys on deposit in his name, as City

Treasurer, prior to the suspension thereof, which was duly allowed by the receiver of said bank; that since the allowance of said claim the receiver has paid to him, as City Treasurer, the sum of $756.50, leaving a balance due him, as said City Treasurer, the sum of $756.50, the amount sued for; and that there are not sufficient assets in the hands of the receiver to pay such balance.

Defendants further alleged that the sum received by Woods, as City Treasurer, had been paid over to his successor, and that he had assigned the claim against said bank for the balance due to his successor in office.   The answer then alleges that the City of Livingston had not prior to said 7th day of July, 1893, selected any depository of the said moneys of the city, except as hereinbefore set forth; that said loss of the funds of the city was occasioned without any fault, negligence, or fraud on the part of said defendant Woods; and that he faithfully discharged the duties of his office, as required of him by law; and that by reason of the facts hereinbefore mentioned, the said plaintiff is, and ought to be, estopped from claiming that said defendant Woods did not use ordinary care and diligence in the selection of the Livingston National Bank as said depository.

The plaintiff filed a general demurrer to the answer, which was sustained by the court.   Defendants electing to stand upon their answer, a judgment was rendered for plaintiff for the amount sued for.   The defendants appeal from the judgment.

*Campbell & Stork* and *A. J. Shores*, for Appellants.

*Smith & Wilson*, for Appellee.

PEMBERTON, C. J.—Sections 350, 351, and 352 of the Compiled Statutes of 1887 control as to the conditions of the city treasurer's bond, as well as define and limit his duties and powers in relation to the public funds.   Section 350 provides :

"The treasurer shall give bond to the city in its incorporate name, with sureties to be approved by council   *   *   *   for

the faithful performance of his duties as treasurer, and also when he vacates the office that he will deliver over to his successor all money, books, papers, property and all other things belonging to the city or town held by him as treasurer.''

Section 351 provides: ''The city treasurer shall also be city collector. He shall receive all money belonging to the corporation, and shall deposit all money in his name as treasurer.''

Section 352 provides: ''The treasurer is hereby expressly prohibited from using directly or indirectly the moneys or property of the corporation for his own private gain or profit, or that of any other person or persons.''

The contention of the appellants is ''that, when the city treasurer deposited the money of the city in the bank in his name as city treasurer, he performed the duties of his office as directed by law, and fully complied with the conditions of his bond, and if he used ordinary care in selecting the bank in which to deposit the money, and the bank afterwards failed, the loss, if any, must be borne by the city.''

The question here presented of the liability of an officer on his official bond for the loss of public moneys, and what, if any, facts will excuse the loss, is a grave and far-reaching one. We are not only mindful of the importance of this question, but we are confronted with the great difference and conflict of views and decisions upon the subject among the best authorities and highest courts in the land.

Mechem, in his work on Public Officers, says that four theories, at least, of this question, have prevailed, and these four theories are given in Sections 298, 299, 300 and 301 of his work. These sections read as follows:

Section 298: ''One view is based upon the strict language of the bond. The officer having bound himself and his sureties, without reservation or qualification, by the express terms of his bond, that he will duly deliver and pay over the public funds which come into his hands, this obligation 'can only be met or discharged by making such delivery or payment,' and that, having bound himself by this solemn agree-

ment to do this act, he must be 'held liable for his nonperformance, though it is rendered impossible by events over which he had no control.' If the parties had desired exemption in a given contingency, it should have been 'so nominated in the bond.' "

Section 299 :  "A second view, somewhat analogous to the last, is based upon the requirements of the public policy. 'Public policy,' says McLean, J., 'requires that every depositary of the public money should be held to a strict accountability. Not only that he should exercise the highest degree of vigilance, but that he should keep safely the moneys which come to his hands. Any relaxation of this condition would open a door to frauds, which might be practiced with impunity. A depositary would have nothing more to do than to lay his plans and arrange his proofs, so as to establish his loss without laches on his part. Let such a principle be applied to our postmasters, collectors of the customs, receivers of public moneys, and others who receive more or less of the public funds, and what losses might not be anticipated by the public ? No such principle has been recognized or admitted as a legal defense. And it is believed the instances are few, if, indeed, any can be found, where any relief has been given in such cases by the interposition of congress.

As every depositary receives the office with a full knowledge of its responsibilities, he cannot in case of loss complain of hardship. He must stand by his bond, and meet the hazards which he voluntarily incurs.' "

Section 300 :  "A third view is based upon the assumption that, by force of the statutes governing the subject, the officer becomes, in effect, the debtor of the public. His liability, therefore, becomes absolute, and, like other debtors, he is not relieved from liability because he is so unfortunate as to lose, though by unavoidable accident, the money with which he expected to make payment. In legal effect, he is not a mere bailee, but he loses his own money, and cannot therefore call upon the public to bear the loss.

"These views all lead obviously to the enforcement of an exceedingly strict liability."

Section 301 : ''But another view, less stringent, and, in the opinion of the writer, more consonant with reason and justice, has also met with favor, although the cases which maintain it are few.

''By this view, the officer is regarded as standing in the position of bailee for hire, and 'bound *virtute officii*, to exercise good faith and reasonable skill and diligence in the discharge of his trust, or, in other words, to bring to its discharge that prudence, caution and attention which careful men usually exercise in the management of their own affairs,' but 'not responsible for any loss occurring without any fault on his part.'

''The statute may, of course, impose, or the officer may himself assume, a more onerous responsibility; but, in the contemplation of this theory, a greater liability does not result from the simple undertaking to faithfully discharge the duties of the office.''

The authorities in support of these respective theories are cited in the notes to the appropriate sections.

In 1844, the Supreme Court of the United States decided the case of *U. S.* v. *Prescott,* 3 How. 578. Prescott was a receiver of public moneys. The action was on his bond for failing to pay over public moneys received by him. ''The defense pleaded was that the sum not paid over by the defendant, Prescott, and for which the action was brought, had been feloniously stolen, taken, and carried away from his possession by some person or persons unknown to him, and without any fault or negligence on his part; and he avers that he used ordinary care and diligence in keeping said money, and preventing it from being stolen.''

The court held that those facts constituted no defense, and further held that ''the obligation to keep safely the public money is absolute, without any conditions, express or implied; and nothing but the payment of it, when required, can discharge the bond.'' The court further held that such a defense was in violation of public policy. So that we may say *U. S.* v. *Prescott* was decided upon a strict construction of the

terms of the bond, and upon questions of public policy. The decision therefore embraced the first two theories given by Mechem, *supra.*

The Supreme Court of the United States followed the rule or rules of law announced in *U. S.* v. *Prescott,* from 1844, when that case was decided, in *U. S.* v. *Morgan,* 11 How. 154, *U. S.* v. *Dashiel,* 4 Wall. 182, *U. S.* v. *Kechler,* 9 Wall. 83, and perhaps other cases, until 1872, when the case of *U. S.* v. *Thomas,* 15 Wall. 337, was decided. In this last-named case the Supreme Court evidently departed from the stringent rule announced in *U. S.* v. *Prescott,* that nothing but the payment of the money, when required, will discharge the bond.

After examining and commenting on *U. S.* v. *Prescott, supra,* and the cases following it, the court, in *U. S.* v. *Thomas,* says :

"It appears from them all (except, perhaps, the New York case) that the official bond is regarded as laying the foundation of a more stringent responsibility upon collectors and receivers of public moneys. It is referred to as a special contract, by which they assume additional obligations with regard to the safe-keeping and payment of those moneys, and as an indication of the policy of the law with regard to the nature of their responsibility. But, as before remarked, the decisions themselves do not go the length of making them liable in cases of overruling necessity. On the contrary, in the last reported case on the subject, that of *Bevans* v. *U. S.* (13 Wall. 56), Mr. Justice Strong, delivering the opinion of this court, says : 'It may be a grave question whether the forcible taking of money belonging to the United States, from the possession of one of her officers or agents lawfully holding it, by a government of paramount force, which at the time was usurping the authority of the rightful government, and compelling obedience to itself exclusively throughout a state, would not work a discharge of such officers or agents, if they were entirely free from fault, though they had given bond to pay the money to the United States.' These observations show that the particular question raised in this case has been

reserved by the court after its most mature consideration of the subject.

"So much stress has, in almost every case, been laid upon the bond as forming, either directly or indirectly, the basis of a new rule of responsibility, that it seems especially important to ascertain what are the legal obligations that spring from such an instrument.   The learned judges in the great generality of the remarks made in some of the cases referred to, with regard to the liability of a receiving officer, and especially of his sureties, by virtue of his bond, have evidently overlooked what we conceive to be a very important and vital distinction between an absolute agreement to do a thing and a condition to do the same thing, inserted in a bond.   In the latter case, the obligor, in order to avoid the forfeiture of his obligation, is not bound at all events to perform the condition, but is excused from its performance when prevented by the law or by an overruling necessity.   And this distinction, we think, affords a solution to the question involved in this case. *   *   *   The condition of an official bond is collateral to the obligation or penalty.   It is not based on a prior debt, nor is it evidence of a debt; and the duty secured thereby does not become a debt until default be made on the part of the principal.   Until then, as we have seen, he is a bailee, though a bailee resting under special obligations.   The condition of his bond is not to pay a debt, but to perform a duty about and respecting certain specific property which is not his, and which he cannot use for his own purposes."

In *U. S.* v. *Thomas*, it may safely be said, we think, that the court decided that the public officer in such cases is a bailee of the public funds, and not a debtor to the public, and also that the bond is conditional, and that the officer is not compelled to pay it in any event, and under all circumstances, as held in *U. S.* v. *Prescott* and other cases.   It is worthy of remark that, while Mr. Justice Miller dissented from the opinion in *U. S.* v. *Thomas*, he distinctly says he did not approve of the doctrine announced in *U. S.* v. *Prescott* and the cases which followed it.   He says :

"When the case of *U. S.* v. *Dashiel* came before the court, I was not satisfied with the doctrine of the former cases. I do not believe now that, on sound principle, the bond should be construed to extend the obligation of the depositary beyond what the law imposes upon him, though it may contain words of express promise to pay over the money. I think the true construction of such a promise is to pay when the law would require it of the receiver, if no bond had been given, the object of taking the bond being to obtain sureties for the performance of that obligation. Nor do I believe, that prior to these decisions there was any principle of public policy recognized by the courts, or imposed by the law, which made a depositary of the public money liable for it when it had been lost or destroyed without any fault or negligence or fraud on his part, and when he had faithfully discharged his duty in regard to its custody and safe-keeping." And says, further : "If the opinion or judgment of the court were based upon a frank overruling of those cases, and an abandonment of the doctrines on which they rest, I should acquiesce."

A number of the courts of the country have held to the doctrine embraced in the third theory given by Mechem, as shown above, namely, that the officer in such cases is the debtor of the public, and therefore cannot be excused for loss of public funds for any reason. These authorities are cited in the notes to Section 300, Mechem, *supra.*

As our statute expressly prohibits the use of the public funds, directly or indirectly, by the city treasurer, we cannot subscribe to the doctrine that he is a debtor to the public. We think such a theory is illogical, and not supported by the best authorities. We think in such cases the officer is a bailee of the funds. To hold that the moneys received by him are his own, and that he may so treat them on the theory that he is only a debtor of the public, would, in our opinion, lead to a most vicious abuse of public trust, encourage malfeasance in office and misuse of the public funds.

This brings us to the consideration of the rule embraced in Mechem's fourth view, that the "officer is regarded as stand-

ing in the position of a bailee for hire, and 'bound, *virtute officii*, to exercise good faith and reasonable skill and diligence in the discharge of his trust, or, in other words, to bring to its discharge that prudence, caution, and attention which careful men usually exercise in the management of their own affairs,' but 'not responsible for any loss occurring without any fault on his part.' ' ''

This theory is approved by Mechem.   It is, in our opinion, supported fully by *U. S.* v. *Thomas* and the dissenting opinion of Mr. Justice Miller in that case.   *Cumberland Co.* v. *Pennell*, 69 Me. 357.

In *State* v. *Copeland*, (Tenn. Sup.) 34 S. W. 427 (a case very similar to the one at bar), the court holds the officer not a debtor to the public, but a trustee, charged with duties and liabilities which are fixed and measured by the law relating to his office, and not alone by the terms of his bond, the chief purpose of which is to add the security of bondsmen to his personal responsibility for the performance of the duties imposed on him by law.   In the case just cited, the law did not require, like in the case at bar, that the officer should deposit the money in his own official name.   But this he did do in a bank of good standing and reputation.   The officer having acted with proper caution and prudence, being guilty of no negligence or bad faith in the selection of the bank of deposit, the court held that he was not liable for the loss of the funds by the failure of the bank.

The same doctrine is announced in *Wilson* v. *People*, (Colo. Sup.) 34 Pac. 944, and in *McClure* v. *Board of Com'rs.*, Id. 763.

The three cases last cited involve the question of the liability of public officers for the loss of public funds.   They are recent, and collate and review the authorities on this important question.   They hold that the officer, under the facts and circumstances disclosed, is not liable for the loss of public funds, and show the trend of recent adjudications to be towards the fourth theory of this subject, as given by Mechem in Section 301 of his work on Public Offices and Officers.   It

is held that, when the law requires an officer to deposit public funds, a failure to do so is a breach of his bond. Murfree, Off. Bond, § 327.

In the case at bar the law of the state and the ordinance of the city both required the officer to deposit the money. By the demurrer it is admitted that the officer deposited it in a bank of good standing and reputation, and that he exercised good business caution and prudence, and was without fault, negligence, or fraud in so doing.

In accordance with the best reason and recent authorities on the subject, we are constrained to hold that the facts pleaded in the answer, and admitted by the demurrer, constituted a good and sufficient defense. With Mechem, we concede that the majority of the cases and decisions are the other way, but, like him, we think the view we have taken "more consonant with reason and justice." We believe, with the court in *U. S.* v. *Thomas*, that in such cases the officer is "a bailee resting under special obligations," and that the burden rests upon him to show beyond any reasonable controversy that he has used that prudence, caution and careful attention which prudent men usually exercise in the management of important affairs, and that he has been free from all negligence and the slightest imputation of fraud in the discharge of his official trust.

When held to such strict accountability, we are unable to see why a public officer should be held liable for a loss which he was unable to prevent when so discharging his duties, any more than any other bailee or trustee who suffers a loss under like circumstances.

This view of the case may be said to be in conflict with *Commissioners* v. *Lineberger*, 3 Montana 231. This case follows strictly *U. S.* v. *Prescott*. We doubt if the facts in the Montana case made it necessary to invoke the rule of the Prescott case. But, however that may be, the case of *Commissioners* v. *Lineberger*, in so far as it conflicts with the views expressed in the case at bar, is overruled.

The judgment appealed from is reversed, and the cause remanded, with direction to overrule the demurrer.

*Reversed and Remanded.*

BUCK, J., concurs.

HUNT, J.—I concur in a reversal of the case solely upon the ground that the statute required the deposit of the funds by the city treasurer in a bank, and if the treasurer exercised all reasonable prudence and caution in the selection of a bank wherein to deposit the funds, and was free from negligence in permitting the deposit to remain in the particular bank selected as a depository, he cannot be held liable for funds lost by reason of the failure of the depository bank.