# THE CITY OF GREAT FALLS, APPELLANT, *v.* WILL HANKS ET AL., RESPONDENTS.

[Submitted April 1, 1898.   Decided April 18, 1898.]

## *Official Bond—Evidence.*

1. OFFICIAL BONDS.—In an action against the sureties upon the bond of a treasurer, in which the answer admits that the treasurer during his term of office received all the moneys alleged in the complaint to have been received by him, it is not error to exclude testimony offered by the plaintiff for the purpose of showing the amount received by the treasurer from his predecessor.
2. SAME—*Death of Treasurer.*—The official bond of a city treasurer was conditioned for the faithful performance of his duties, and that when he should vacate the office, he would deliver to his successor all money and property belonging to the city held by him. *Held*, that his death during his term of office created a vacancy, but did not change his obligation; and that when the moneys were not paid over to his successor, the sureties on his bond were liable.
3. SAME—*Nature of Action.*—An action against the sureties upon an official bond of a treasurer, for a breach of the condition of the bond to the effect that the principal would turn over to his successor all moneys belonging to the city and received by nim as treasurer, is an action upon a contract for the breach thereof.
   SAME.—The complaint in such an action sufficiently alleges the breach of the condition of the bond, when it states that during his term of office he received a specified sum of money belonging to the city and failed to pay any of the same over; and the further allegation to the effect that the treasurer converted the same to his own use does not change the nature of the action or prejudice the defendant.

*Appeal from District Court, Cascade County, C. H. Benton, Judge.*

ACTION by the city of Great Falls against Will Hanks, Thomas E. Brady, K. B. McIver, A. E. Dickerman, R. Vaughn and J. H. McKnight.   Judgment for defendants, and plaintiff appeals.   Reversed.

Statement of the case by the justice delivering the opinion.

Action by the plaintiff and appellant, the City of Great Falls, against the sureties on the official bond of the treasurer of the city.

It appears by the complaint that one P. J. Elliott was the treasurer of the city of Great Falls from April 22, 1893, until August 5, 1893, when he died, during his incumbency of the office.   It is alleged that he gave a bond with the defendants

and two others, since deceased, as sureties, conditioned for the faithful performance of the duties required to be performed by him as treasurer of the city.

The bond itself was in the penal sum of $75,000, and contained the following condition: "The condition of the above obligation is such that whereas, the said Parmlee J. Elliott was elected to the office of city treasurer, within and for the said city of Great Falls, on the 10th day of April, A. D. 1893: Now, therefore, if the said Parmlee J. Elliott shall well and faithfully perform all the duties of his said office of city treasurer, and shall pay over all moneys that shall come into his hands as such city treasurer, and shall deliver to his successor in office all moneys, books, properties, etc., belonging to his said office, then the above obligation shall be null and void; otherwise to remain in full force."

It is further alleged that between the 1st day of May, 1893, and the 5th day of August, 1893, Elliott, as treasurer, received various sums of money belonging to the city of Great Falls, amounting to about the sum of $18,000. After averring that it was the duty of the city treasurer to safely keep, and turn and pay over, the said moneys to his successor in office, the complaint continues: "But which said sum of money so as aforesaid belonging to plaintiff the said city treasurer then and there fraudulently and wrongfully, and in breach of his said trust and of the conditions of his said bond and obligation, converted and appropriated to his own use. And in further breach of his said trust, and of the obligation of his said bond, the said city treasurer, Elliott, fraudulently and wrongfully failed and neglected to pay over said sum of eighteen thousand dollars, or any part thereof, so as aforesaid coming into his hands as such city treasurer, and fraudulently and wrongfully converted and appropriated the same and the whole thereof to his own use, and thereby the said Elliott did fail to perform the duties of his said office." It is then alleged that, upon the failure of said city treasurer to faithfully perform the duties of his office as aforesaid, the defendants, by virtue of the provisions of the bond and of the premises

and of the law, became and still are obligated to pay the city the aforesaid sum of money ''so as aforesaid fraudulently and wrongfully converted and appropriated to his own use by said city treasurer, Elliott, which said moneys are now due and payable to plaintiff from defendants, and became due and payable on, to-wit, August 5, 1893, no part of which has ever been paid.''

It is alleged that on August 11, 1893, L. G. Phelps became the successor of the said Elliott as city treasurer, and assumed the duties of said office on said date.    It is then averred that ''no part of said sum of eighteen thousand dollars, so as aforesaid wrongfully and fraudulently converted and appropriated to his own use by said Elliott as city treasurer, of the moneys and property of the said city of Great Falls, has ever been repaid to plaintiff, or to the successor in office of said city treasurer by said Elliott, or by any one else, although payment thereof has been duly and frequently demanded.'' Judgment was asked against the defendants for $18,000 and interest.

The defendants, Vaughn, Dickerman, McKnight and McIver, answered jointly.  They admitted the receipt of the $18,000 by Elliot as treasurer, but denied that Elliott ever wrongfully, fraudulently or at all converted the said sum, or any part thereof, to his own use, or that he failed to perform the duties of his office in any particular whatever.    They also alleged that at the time of Elliott's death there was no one authorized to receive any moneys belonging to the city of Great Falls from him, and that his term of office did not terminate before his death, and that there was no successor appointed to take his place until subsequent to his death.    Defendants denied that by any act of the said Elliott, or by any omission on his part, they or any of them, by the provisions of the bond, or by the laws of the state, ever became or are jointly and severally liable to plaintiff in any sum whatsoever, and denied that the sum mentioned in the complaint became due or payable from the defendants on August 5th or any other time, but alleged affirmatively that the whole sum of

$18,000 has been fully paid to the plaintiff. They further denied any wrongful conversion by Elliott, and then set up certain matters in relation to the signatures upon the bond having been made upon the condition that the bond should not be operative, or take effect, or be delivered to the plaintiff, until fourteen other competent sureties had been obtained thereto and had executed the same. It is also alleged that the plaintiff city never made demand of any kind upon the legal representative of said Elliott, deceased, for any of the moneys claimed in the complaint. And as a further defense it was alleged that at the time of Elliott's death he had on deposit in national banks at Great Falls the $18,000 described in the complaint, which was on deposit to the credit of the city treasurer of Great Falls, and not to his individual credit, and that subsequently, in September, 1893, the plaintiff made proof of its ownership of said moneys, and claimed the same as its deposit, and received credit at the hands of the receivers of said banks for all the moneys so held on deposit, and has since said time received payment of the same, and thereby has released the said Elliott's estate, as well as these defendants, from any claim that it might possibly assert as a liability upon the bond described in the complaint.

The plaintiff's replication denied all the new matter contained in the answer in relation to the condition imposed at the time of the execution and delivery of Elliott's bond; denied that at the time of his death Elliott, as treasurer, had any moneys on deposit to his credit as treasurer, as alleged by defendants; and denied that plaintiff claimed moneys on deposit, and received the same, and thereby or otherwise released Elliott's estate or the defendants from liability; and denied that it ever had received any part of the $18,000 mentioned in its complaint.

The cause was tried in April, 1896, and judgment rendered for the defendants. The court made special findings to the effect that prior to Elliott's death he deposited in his name as city treasurer, in the Merchants' National Bank of Great Falls, a portion of the funds coming into his hands as city treasurer,

and that on July 24, 1893, the said bank suspended payment and went into the hands of a receiver.

The sixth and ninth findings of the court were as follows: "No. 6. The court further finds that the said Merchants' National Bank was a bank incorporated under the laws of the United States, which had been doing business in the city of Great Falls for a period of several years prior to the making of the deposit by the city treasurer as aforesaid; and there is no evidence in the case showing, or tending to show, that the bank at the time of the making of said deposit, or at any time prior to the appointment of a receiver as appointed, was not solvent or in good repute." "No. 9. The court further finds that the said P. J. Elliott did not convert, either fraudulently or otherwise, any of the moneys received by him as city treasurer, to his own use, and that he did at all times faithfully perform the duties of his office."

As conclusions of law, the court found that Elliott's action in respect to the moneys deposited in the Merchants' National Bank was lawful, and not a conversion of any of the funds received by him as city treasurer.

The plaintiff moved for a new trial. This was denied, and plaintiff appeals from the order denying the same and from the judgment.

*H. H. Ewing, Sam Stephenson, Ransom Cooper and Leslie & Downing,* for Appellants.

*A. J. Shores, T. E. Brady and Geo. W. Taylor,* for Respondents.

HUNT, J.    Several assignments of error are predicated upon rulings made upon the trial of the case, whereby the court excluded certain evidence offered by plaintiff to show that Elliott's predecessor in office turned over to him certain sums of money, the property of the city of Great Falls. We find no error in this action of the court, inasmuch as it was expressly admitted by the answer that Elliott, as treasurer, did

between May 1 and August 5, 1893, receive $18,000 in money belonging to the said city.  Plaintiff having asked judgment for $18,000 and interest only, the evidence was immaterial.

Plaintiff then introduced evidence of the failure on July 24, 1893, of the Merchants' National Bank at Great Falls, the depository where Elliott, as treasurer, had to his credit when he died the sum of $21,184.78.   This evidence was properly admitted.

Thereafter plaintiff asked L. G. Phelps, the successor in office of Elliott and receiver of the suspended Merchants' National Bank, whether the money found to have been deposited in said bank by Elliott had been deposited there before the suspension of the said bank.   Defendants objected to this question as immaterial, unless plaintiff intended to show "an unlawful deposit."   The court properly overruled this objection.

Plaintiff also proved a demand of defendants, and the fact that three dividends, of 10 per cent. each, had been paid to the city treasurer by the receiver of the Merchants' National Bank since the suspension, but that no money had been paid by defendants to the city's account.

Upon substantially the foregoing concessions and proofs each party moved for judgment.   Defendants prevailed.

In a memorandum opinion by the district judge, wherein he gave his reasons for deciding in respondents' favor, he said in part:   "The only breach in the conditions of the bond, if one was committed, was in the failure on the part of Elliott to pay over the moneys coming into his hands.   The recovery is not sought upon any other grounds.   This became impossible because of the sudden death of Elliott by drowning in the Missouri river.   It cannot be that the legislative intent was that a principal on a bond, the condition of which requires him at the expiration of his term to turn over to his successor the funds in his hands, should be considered in default of that condition because of his death.

"The statutory obligation is that the treasurer, when he vacates his office at the expiration of his term, or before, shall

deliver to his successor in office all moneys, etc., belonging to the city, held by him as treasurer, and there could be no liability under the statute if death prevented it.  There was no wrongful conversion before his death; there could not be after.''

We disagree with this view of the law.  The statute under which Elliott gave bond as city treasurer was as follows: ''The treasurer shall give bond to the city in its corporate name, with sureties to be approved by the council or board of aldermen, in such sum as may be required, which shall not be less than the total amount of moneys estimated to be paid to him during the year, for the fathful performance of his duties as treasurer, and also when he vacates the office that he will deliver over to his successor all money, books, papers, property and all other things belonging to the city or town, held by him as treasurer.''    (Compiled Statutes 1887, div. 5, § 350.)

There is in the statute no provision, expressed or implied, limiting the liability of the treasurer to a vacation of office at or by the expiration of his term, but a plain obligation upon him that, when he does vacate, he will deliver over to his successor all money, etc., belonging to the city held by him as treasurer.  An existing office is vacated by the death of the incumbent as well as by his resignation or removal.  The fact that death overtakes an officer cannot alter the consequential fact that the office is thus vacated, or lessen the liability of the official or his sureties.  The condition of Elliott's bond was for the faithful performance of his duty as treasurer, and that he would pay over all moneys that came into his hands as treasurer, and deliver to his successor all moneys belonging to the office of treasurer.  It was part of his duty under the statutes to deposit all money of the city in his name as treasurer.  By so holding it in his official name, if at any time or for any reason, accidental or otherwise, he might vacate the office, his successor could at once be possessed of the funds belonging to the city.  Death did not change the legal obligation on Elliott to be honest, or to faithfully perform the duty of having all the moneys belonging to the city on hand and in

his name as treasurer, so that his successor could receive them at once, if a vacancy should occur; it only prevented the manual tradition by Elliott to any successor in office of the deposits themselves, or of evidences of such deposits. And, when his sureties agreed that he would faithfully perform his duties, they also agreed that when he vacated the office he would have on hand for delivery over to his successor all moneys received by him as treasurer. So, when the vacancy occurred and the city's moneys received and deposited by the treasurer were not on hand, and were not paid over, there was a breach in the conditions of the bond, Elliott's duty had not been faithfully performed, and the sureties became liable to make good any deficiency, and to pay the same over to Elliott's successor in office. To countenance any other rule would be to impair the security of public funds. It cannot be that the sureties of an official who has absconded with public moneys, or of one who has embezzled them, yet who has died before his term expired, are in a far better position than the bondsmen of one who, though equally guilty, has remained in office until the expiration of his term. If such be the law, flight or suicide of officers who are short in their accounts before their terms may expire are tempting hopes of their sureties. Such never was the intention of the legislature, and such is not the language of the statute.

The case of *Allen* v. *State*, 6 Blackf. (Ind.) 252, is in point, although not nearly so strong a case as the one at bar. There the official gave bond to pay over to his successor, at the expiration of his term of service, all moneys which might then be in his hands. The official died during his term, with various sums of money in his hands as an official. When the sureties were sued because no money had been turned over, it was argued that it was impossible for a commissioner, whose successor was not appointed until after his death, to deliver money to such successor. But Judge Dewey, for the court, held such objections were not well taken. Speaking of the purpose of the legislature, he said: "Their intention doubtless was that that the bond should secure the payment over to the

proper officer of all the school funds remaining in a commis-
sioner's hands at the termination of his service, however that
event might be produced, whether by resignation, removal or
death.'' We approve of this view, as applied to the bond
given by Elliott, considering the statutes of this state then
controlling. Murfree on Official Bonds, § 455, disapproves
of *Allen* v. *State, supra*, but places the reason for his disap-
proval upon the particular terms of the bond, which imposed
no condition upon the officer to pay over until the expiration
of his term of service. Inasmuch as the statute of Montana,
heretofore quoted, required a bond by the treasurer with sure-
ties to pay over when he vacated, the criticism of Murfree
loses all force in the present case. Throop on Public Officers,
§ 251, also lays it down that, as against a treasurer's sureties,
the condition of the treasurer's bond is broken if he dies with
funds in his hands unaccounted for, citing the Indiana decision
to uphold the test. The laws requiring the city treasurer to
deposit all moneys received by him as treasurer to his official
account, and governing his official acts in relation to city funds,
make him a bailee. (*City of Livingston* v. *Woods*, 20 Mont.
92, 49 Pac. 437.) When the treasurer died, and his office
was vacated, the bailment terminated, and the city, through
Elliott's successor, had a right at once to claim its money.
(Lawson on Bailments, 62; Hale on Bailments, page 76.)

The expression of the foregoing views upon the liability of
the treasurer and his sureties leads us to conclude that the
complaint in this action is sufficient. It is good in its aver-
ment of a failure to safely keep the city moneys, and to de-
liver them over to his successor, and in its allegations of a
failure and neglect on Elliott's part to pay over the sum of
$18,000, or any part thereof, that came into his hands as
treasurer of the city of Great Falls. If these allegations were
true, he failed to perform the duties of his said office.

The complaint is drawn in contract, notwithstanding its
allegations of a fraudulent and wrongful conversion. The
pleader in making the charges of conversion believed the
omission of a city treasurer to safely keep city funds war-

ranted such legal conclusions.   The complaint, however, having been framed on the theory of an action to hold the defendants upon their liability in contract, immaterial, or even incorrect, legal conclusions do the defendants no possible harm. (*Greentree* v. *Rosenstock*, 61 N. Y. 583.)

We gather from the pleadings and proceedings that plaintiff had two theories of the case—one, that a failure to safely keep and pay over the city money constituted breaches of the bond; another, that a deposit of city funds in a bank that afterwards suspended by a city treasurer necessarily constituted a conversion.   The first theory is correct, but the latter is not. (*Livingston* v. *Woods, supra.*)

Defendants likewise proceeded upon an erroneous theory in regarding the only issue in the case to be whether Elliott, as treasurer, fraudulently and wrongfully converted and appropriated to his own use $18,000 of the city's money received by him as treasurer.   They should have recognized the action as one in contract.   Now, however, that the law concerning the liability of a city treasurer has been settled by the doctrine of *Livingston* v. *Woods, supra*, the parties hereto can amend their pleadings and try this case in accordance with the simple rules laid down in the opinion filed therein.

Believing it just and proper that the action should be tried anew, the judgment and order of the district court are reversed, and the cause is remanded, with directions to grant a new trial.

*Reversed and remanded.*

PEMBERTON, C. J., concurs.   PIGOTT, J., disqualified.