STATE EX REL. RANKIN, ATTORNEY GENERAL, PLAINTIFF, *v.*
MADISON STATE BANK OF VIRGINIA CITY,
DEFENDANT.

FIDELITY & DEPOSIT CO. OF MARYLAND, APPELLANT,
*v.* P. B. McCLINTOCK, RECEIVER, RESPONDENT.

(No. 5,350.)

(Submitted September 11, 1923. Decided September 26, 1923.)

[218 Pac. 652.]

*Banks and Banking—Insolvency—Public Funds—State's Preference Right to Payment — Waiver — Suretyship — Subrogation—Public Policy.*

Insolvent Banks—Public Funds—State's Preference Right to Payment—
Surety—Subrogation.
 1. By virtue of the common law and in the absence of constitutional or statutory provisions upon the subject, the state in its
 sovereign capacity is entitled to preference over unsecured general
 creditors of an insolvent bank in which its funds are deposited so
 long as the debtor bank retains title to the property out of which
 payment is to be made, and where its deposits are secured, the
 surety upon making payment is subrogated to the same preference
 right which the state might have asserted.

Appeal—*Dicta* not Authority.
 2. Views expressed by the supreme court in a decision upon a subject not before it are *dicta* and not authority.

Insolvent Banks—Waiver of State's Preference Right to Payment.
 3. *Held*, that section 182, Revised Codes of 1921, the state depository law, and sections 6071 and 6083, the former requiring state
 banks to make report of their condition to the superintendent of
 banks and the latter conferring upon him visitorial powers with the
 right to examine their books, do not expressly or by implication
 waive the state's preference right over unsecured creditors of an
 insolvent bank to payment of its deposits.

State—Public Policy—Supreme Court Decision—Presumptions.
 4. Where, after a decision of the supreme court interpreting the
 public policy of the state upon a given subject, the legislature in
 three later sessions made no effort to correct the holding, it will be
 presumed that the rule announced correctly expresses its policy
 thereon.

Insolvent Banks—Title to Property not in Receiver or Superintendent of
Banks.
 5. Neither the superintendent of banks upon taking charge of, nor
 a receiver appointed for, an insolvent bank succeeds to the title of
 the bank's property.

---

 1. Deposit of public funds as preferred claim in case of insolvency
of bank, see notes in 8 **Ann. Cas.** 116; **Ann. Cas.** 1916B, 1264.

*Appeal from District Court, Madison County; Joseph C. Smith, Judge.*

ACTION by the State, on the relation of Wellington D. Rankin, Attorney General, against the Madison State Bank of Virginia City, insolvent, in which defendant Fidelity & Deposit Company of Maryland appealed from an order denying its application for an order directing defendant P. B. McClintock, as receiver of defendant bank, to admit a preference right asserted. Remanded, with directions.

*Messrs. Day & Mapes,* for Appellant, submitted a brief and one in reply to that of Respondent.

*Messrs. Rodgers & Gilbert,* for Respondent, submitted a brief.

*Mr. John G. Brown, Amicus Curiae,* submitted a brief, and argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On May 2, 1922, the Madison State Bank, a banking corporation  organized under the laws of this state, became insolvent, and the state superintendent of banks took charge of its affairs. Later an action was commenced by the state, on the relation of the attorney general, against the bank, and such proceedings were had therein that on June 19 a receiver was duly appointed, who qualified and entered upon the discharge of his duties. Prior to the time the bank suspended it had been designated a depositary for state funds in the hands of the state treasurer, and had given a bond, with the Fidelity & Deposit Company of Maryland as security, which bond had been duly approved. At the time of suspension the state treasurer had on deposit in the bank public funds of the state to the amount of $2,450, upon which interest to the amount of $12.75

was due. Upon demand of the state, the security company paid the amount of the deposit, with the accumulated interest, and thereafter presented its claim to the receiver for payment in preference to the unsecured claims of the general creditors of the bank. The receiver refused to recognize the preference right asserted, and application was then made to the court in the receivership proceedings for an order directing the receiver to admit the preference right and pay the claim in full out of the funds in his hands available for such purpose. After a hearing the court denied the application, and the security company appealed from the order.

In *Aetna Accident & Liability Co.* v. *Miller*, 54 Mont. 377, L. R. A. 1918C, 954, 170 Pac. 760, a state of facts identical in [1] all essentials with the facts of this case was presented, and it was there held: (1) That by virtue of the common law, and in the absence of constitutional or statutory provisions upon the subject, this state in its sovereign capacity is entitled to preference over unsecured general creditors of an insolvent bank in which its funds are deposited, so long as the debtor bank retains title to the property out of which payment is to be made; (2) that a receiver appointed to take charge of the affairs of an insolvent bank does not acquire title to the property of the bank; (3) that while a state may waive its preference right of payment, this state has not done so; and (4) that, if the deposit of state funds is secured, the security, upon making payment, is subrogated to the same preference right which the state might have asserted. To break the force of that decision it is now contended that it conflicts with the decision in *Yellowstone County* v. *First Trust & Savings Bank*, 46 Mont. 439, 128 Pac. 596, and that it is opposed to the current of modern authority in this country. In the opinion in the *Miller Case* reference was not made to the decision in the earlier case, and the reason for the omission was apparent to the members of this court, though it may not be to others. The *Yellowstone County Case* was submitted and determined upon an agreed statement of facts from which it appeared that the

[68 Mont. 342.]

county treasurer, in violation of the law had on deposit in the First Trust & Savings Bank, at the time the bank failed, county funds to the amount of $33,000, and that the deposit was secured to the extent of $12,500 only. The one question submitted for decision was: "Is the deposit of $33,000, or any part thereof, a trust fund, with the payment of which the assets of the defendant bank in the hands of said receiver are chargeable as a preferred claim?" We answered the inquiry by holding that the unsecured portion of the deposit was a trust fund, to be paid to the county in preference to unsecured claims of the general creditors of the bank. Unfortu-
[2] nately we did not stop when we had reached our conclusion, but went further and expressed views upon a subject not before us, *viz.*, the character of the secured portion of the county's deposit and the right of the county with respect thereto. The views thus expressed are clearly *dicta*, and to that extent the decision is not authority.

As indicated above, in the *Yellowstone County Case* the question of the county's right to preference in the payment of the entire amount of its deposit, based upon the common-law rule, was not even suggested, and was not considered or determined. In the *Miller Case* the right of the state in virtue of its sovereignty to assert a preference in the payment of its claims was the primary question submitted and decided. From the standpoint of authority there is not any conflict between the two decisions.

The opinion in the *Miller Case* makes an exhaustive review of the authorities, and discloses that, of the many jurisdictions in which the question of the state's preference right had been before the courts, in only three states—New Jersey, South Carolina and Mississippi—was the existence of the rule announced by this court denied. Since that decision was rendered, the question has been before the court of last resort of each of the following states: Arizona, Minnesota, Oregon, Utah, Washington and West Virginia. (*In re Central Bank of Wilcox*, 23 Ariz. 574, 205 Pac. 915; *American Surety Co.* v. *Pearson*, 146

Minn. 342, 178 N. W. 817; *United States Fidelity & Guaranty Co.* v. *Bramwell* (Or.), 217 Pac. 332; *National Surety Co.* v. *Pixton,* 60 Utah, 289, 24 A. L. R. 1487, 208 Pac. 878; *Aetna C. & S. Co.* v. *Moore,* 107 Wash. 99, 181 Pac. 40; *Woodyard* v. *Sayre,* 90 W. Va. 295, 24 A. L. R. 1497, 110 S. E. 689.)

In Oregon and West Virginia the right of the state to preference founded upon the common-law rule is asserted, and substantially the same rule was applied in Minnesota under a statute.

The Arizona court assumed, without deciding the question, that the common-law rule would prevail, in the absence of statute waiving the preference right, but held that the state's depository law operated as a waiver.

In Washington, the existence of the common-law rule was not denied, but the court held that, if the rule was in effect, its provisions could not be invoked in the particular case because the state bank examiner had taken possession of the insolvent depositary before the preference right was asserted, and the statute authorizing such possession operated to pass to the examiner the title to the depositary's property out of which payment would have to be made.

The Utah court likewise does not deny that the common-law rule would be in full force and effect, if the state had not waived its preference right. It holds, however, that the facts of the instant case do not admit of its application, and holds further, apparently, that by virtue of certain statutes the state had waived its preference right.

It will thus be observed that only three states—New Jersey, South Carolina and Mississippi—now deny the existence of the rule announced by this court, and that our decision in the *Miller Case* is supported by the overwhelming weight of authority.

It is urged upon us, however, that certain statutes which **[3]** were not called to the attention of the court in the *Miller Case* should be held to operate as a waiver of the state's claim to a preference right, and that this court should adopt the

views expressed by the Arizona and Utah courts in the cases cited above. The statutes invoked are sections 182, 6071 and 6083 of the Revised Codes of. 1921. Section 182 is our state depository law, and a reference to some of the history in connection with it is not out of place. By section 443, Political Code of 1895, the state treasurer was charged with the duty to keep the public funds in his possession until disbursed according to law. He was permitted, but was not directed, to deposit the funds with banks in this state. If he made deposits in such banks he was required to exact ample security, but the depositaries were not required by law to pay interest upon the deposits. In *City of Livingston* v. *Woods*, 20 Mont. 91, 49 Pac. 437, this court in 1897 held that a city treasurer who was required to keep the funds of the city on deposit was ·not liable for loss occasioned by the insolvency of a depositary, if he used reasonable prudence and caution in selecting the depositary and was without fault in maintaining the deposit.

By an Act approved March 7, 1907 (sec. 183, Rev. Codes 1907), section 443 above was amended. The amended Act required the state treasurer to designate as depositaries of state funds in his possession as many banks in this state as in his judgment were necessary; to take adequate security from each depositary before depositing funds with it, and to collect interest for the state upon such deposits at the rate of two and one-half per cent per annum, computed upon the daily balances. In 1908, section 14, Article XII, of our state Constitution was amended, and by the amended section the governor, state auditor and state treasurer are constituted a state depository board, with certain enumerated powers. The Act approved March 9, 1909, now section 182, Revised Codes of 1921, was enacted to carry out the purpose of the constitutional amendment. It provides that the depository board shall designate the banks which are to be depositaries and fix the rate of interest to be paid to the state, provided the rate fixed shall not be less than two and one-half per cent. It provides, further,. that each depositary shall furnish security for the deposit, to be ap-

proved by the board, and it relieves the state treasurer from liability for loss, except for his own negligence, fraud or dishonorable conduct. This Act superseded the Act of March 7, 1907.

This history discloses that since 1895 it has been the public policy of this state to require security, in addition to that furnished by the state treasurer's official bond, for all state funds under the control of the state treasurer when deposited in banking institutions in this state, and, since March 7, 1907, to require every depositary to pay interest to the state upon the funds so deposited with it. The only material changes affected by the constitutional amendment of 1908 and the Act of 1909 were: (1) To give the state depository board the authority to designate the depositaries and to approve the security furnished by each; and (2) to set at rest the question of the state treasurer's liability for loss, if, indeed, that question had not been determined finally in the *Woods Case* above.

Section 6071, Revised Codes of 1921, requires that every bank organized under the laws of this state shall report to the superintendent of banks at least five times each year, and the contents of the report are indicated somewhat in detail. Section 6073 provides that the superintendent of banks may require additional reports whenever in his judgment such special reports are necessary to inform him fully of the actual condition of such banks. Section 6099 applies substantially the same rules to private banks doing business in this state. Section 6083 confers upon the superintendent of banks visitorial powers, with authority to examine the books and affairs of state and private banks.

With this legislative history before us, the question is presented: Has the state waived its preference right? The supreme court of Utah recognizes the general rule that: "The rights of the sovereign state are not deemed lost or waived unless the waiver is in express terms." Certainly it cannot be said that in any of the statutes enumerated above there is any express waiver of the state's preference right. But we may

go further: Those statutes, singly or collectively, are not inconsistent with the common-law rule; hence it cannot be said that they supplant it by implication, if such a doctrine could be invoked in any event to defeat the state's right. They do provide additional security for state funds deposited in the designated banks, and they furnish the means by which the state may be advised at all times of the condition of such depositary banks as are subject to the state's visitorial powers; but national banks in this state may be designated state depositaries, and they are not subject to state examination, supervision or control. Since this state, in virtue of its sovereignty, had the preference right conferred by the common law and could lose it only by the declaration of the law-making power, and since we fail to find any statutes from which a legislative purpose to waive the right can be deduced, we adhere to our former decision, and hold that the right still exists in all its force and vigor.

There is a further persuasive reason for this conclusion. After the *Miller Case* was decided, and before the Madison State Bank suspended, there were two regular sessions and one extra session of our legislative assembly; and it is fair to assume that, if this court misinterpreted the public policy of the state in the *Miller Case,* some effort would have been made to correct the error and to express in no uncertain terms the intention to waive the state's preference right; but no such effort was made, and we may indulge the presumption that · the rule announced in that case expresses the policy of this state with respect to its right to claim a preference. And, after all, the common-law rule has its foundation in motives of public policy, in order that the state's funds may not be lost but may be available to meet the expenses of government and discharge the state's obligations.

The decision in the Washington case above is pressed upon our attention but, as observed already, that decision turned upon the question of the effect of the Washington statute. It was held that it operated to vest in the state bank examiner the

title to the depositary's property. We do not have any such statute in this state. Neither the superintendent of banks nor [5] the receiver appointed to take charge of an insolvent bank succeeds to the title of the bank's property. In addition to the authorities cited in the *Miller Case,* we call attention to *State ex rel. First Trust & Savings Bank* v. *District Court,* 50 Mont. 259, 146 Pac. 539, *Rosenblatt* v. *Johnston,* 104 U. S. 462, 26 L. Ed. 832 [see, also, Rose's U. S. Notes], and 14a C. J. 1991.

The *Miller Case* is decisive of this case. The order of the district court is reversed and the cause is remanded, with direction to that court to enter an order in conformity with the views herein expressed.

Mr. Chief Justice Callaway and Associate Justices Cooper, Galen and Stark concur.