GENERAL COURT, (E. S.) APRIL TERM, 1805.

## DAVIDSON vs. CLAYLAND, Garnishee of BLAKE.

Under the act of *March* 1778, *ch.* 9, *s.* 6, as soon as a suit is commenced by the state, a lien is created on the lands of the debtor, and the state acquires a right of preference over the other creditors who had not, prior to the commencement of the suit by the state, secured a lien by judgment, mortgage, or otherwise.

If such lands be sold by a sheriff under a *fieri facias*, issued on a prior judgment and lien, the surplus of the money arising from the sale after satisfying such prior lien, remaining in the hands of the sheriff, is to be considered as land and subject to an *attachment* issued by the state on its judgment, in preference to a *prior attachment* issued by a private creditor on a judgment rendered at the same term.

The title and preamble of an act of assembly are never resorted to in expounding it, to ascertain the meaning of the legislature, where the words in the enacting clause are explicit.

ATTACHMENT on a judgment rendered in this court. It appears by the pleadings in this case, that the State of *Maryland* commenced suits in this court on two bonds against *Blake*, (being bonds by him executed for the performance of the duties of sheriff;) the first on the 19th of July 1797, and the second on the 2d of July 1798. In the first action judgment was obtained on the second Tuesday of September 1799, and in the second action judgment was obtained on the second Tuesday of September 1800. On the first judgment the state sued out a writ of *fieri facias* on the 22d of August 1800, which was directed to *Clayland*, the defendant, then sheriff of Queen-Anne's county, and was levied by him on the land of *Blake*, which land was sold under a *venditioni exponas*, issued on the 23d of September 1800, for a sum of money sufficient to satisfy the said judgment, with the costs, and leaving a surplus of £80, which was paid to the defendant, and still remains in his hands, and was attached by the state on the 23d of July 1801, in virtue of an attachment issued the 1st of May 1801, on the second judgment. *S. T. Wright* having the bond of *Blake*, assigned the same to Mrs. *Davidson*, the plaintiff in this case, who commenced suit thereon for the use of *Wright*, and obtained judgment at September term 1800, and sued out the present attachment on the 25th of April 1801, which was laid in the hands of the defendant on the 4th of May 1801. The defendant *demurred* to the plaintiff's replication, to which there was a *joinder*.

*Martin,* (Attorney General,) and *Wright*, for the Defendant. 1. The state has a preference, in the payment of debts due to it, from the date of the writ, and it is for the public advantage that the state should have such a preference. By the act of *March* 1778, *ch.* 9, *s.* 6, all lands and tenements belonging to any public debtor, after the commencement of suit against

him by the state, shall be liable to an execution of *fieri facias* or *attachment*, issued on a judgment obtained in such suit, in whatever hands or possession they may be found. Between individuals there is no lien on the defendants' lands until judgments are obtained. The first lien has the preference, and the second is entitled to the surplus money arising from a sale of the land, after satisfying the first. The state had a lien by two judgments, which operated from the time of the commencement of the suits, because they gave notice of the state's claim. The state's second suit was commenced on the 2d of July 1798, and judgment was obtained therein at September term 1800, being the same term at which Mrs. *Davidson* recovered judgment. The state's second judgment is therefore entitled to the preference, and the surplus money of £80, on which the state's attachment was laid, is to be considered as liable to the state's lien. The question is, who has the preference, and how is the surplus money to be appropriated?

2. The state has a right to the preference at common law, on the ground of prerogative. See 2 *Harr. and M'Hen.* 198. 3 *Harr. and M'Hen.* 171.

*Spencer* and *Scott*, for the plaintiff. 1. The reasoning of the defendant's counsel is not applicable. They contend, that at common law the state has a preference in the payment of debts due to it, on the principle of prerogative. The Proprietary of *Maryland* had not the prerogative of the crown. It was not granted to him by the charter. His rights, derived under the charter, are expressed in the 2d and 4th *sections*. The act of 1650, *ch.* 28, directing that all debts due to the Proprietary should be first satisfied before any other debts, proves that he had not the prerogative of the crown. No time runs against the King: and that the Proprietary had not the prerogative of *nullum tempus*, &c. is evident from the act of 1729, *ch.* 25, having a special clause to save his rights. All these rights of prerogative were done away by the revolution. There is a difference be-

tween a government arising out of the people, and a government over the people. 1 *Blk. Com.* 251. There is nothing in our form of government which gives the prerogative to the state. It cannot be claimed under the declaration of rights or the constitution—the *seventeenth* section of the former gives a remedy for all rights.

2. The provisions of the act of *March* 1778, *ch.* 9, do not include bonds given by sheriffs. The *preamble* to the act is confined to those persons who had received money out of the public treasury; the *third* section of the act embraces those persons only who were indebted to the state *"by bond or otherwise,"* and the *fifth* section does not touch the case of sheriffs, nor is there any provision in the act which can by any construction be brought to bear upon sheriffs on the bonds by them given for the performance of their duties; for under the *seventh* and last section, sheriffs have never been contemplated as public debtors within the meaning of that section. The bond given by the sheriff is not for the payment of money, but is for the performance of certain things. By the *sixth* section of the act an *attachment* on a judgment may be taken against lands and tenements, as well as goods and chattels. Money in this case is not to be considered as land. The surplus money in the hands of the sheriff is not to be considered as land, but remains subject to the order of the debtor. *Dougl.* 231. 4 *East*, 510. If the sheriff had paid over the money to the plaintiff, he would not have been liable. 1 *T. R.* 729. The lien on the state's second judgment was destroyed by the sale of the land under the *fieri facias*, which issued on the first judgment. The state's second judgment, and that obtained by the plaintiff, were both at the same term, and neither of them was a lien upon the land, nor upon the money. The priority was in favour of the attachment which was first laid, and as the plaintiff's attachment was first laid, she is therefore entitled to the preference. 2 *Harr. & M'Hen.* 261. If the money was considered as land, why was the attachment of the state laid? Money cannot at common law be considered as land.

*Martin*, (Attorney General,) in reply, contended 1. That the prerogative was in the people for their benefit and advantage. That the king has no prerogative as to his private rights. He has it only in his representative character as king of the nation; and it is incident to all governments. The right was conferred upon the Proprietary by the charter, and the acts of 1650, *ch*. 23 and *ch*. 28, and the state enjoys all the rights which were vested in the Proprietary as head of the government; and it is settled law that the state has all the prerogatives of the king of *Great Britain*.

2. In the act of *March* 1778, *ch*. 9, there is no restriction as to any particular debt. The *preamble* of an act of assembly is only to be resorted to for the purpose of explaining doubtful passages in the act. The expression in the act, *"by bond or otherwise,"* is universal, and comprehensive enough to take in sheriffs' bonds. Both of the state's judgments were a lien on the land from the time the suits were commenced. It was not in the power of the sheriff, and no act or conduct of his could divest the state of its lien, or deprive the state of its right, and the surplus money must be applied to satisfy the state's lien. The sheriff had no right to sell more land than was necessary to satisfy the first judgment, and the money is to be considered in the same situation as the land would have been if there had been no sale. If the sheriff levies more than is sufficient to pay the first execution, he must apply the surplus to pay the next execution, according to the priority of the lien on the property sold.

CHASE, Ch. J. The question to be decided by the court is, whether the state is entitled to a preference?

The Court are of opinion, that the act of *March* 1778, *ch*. 9, fully embraces this case.

The *sixth* section of that act renders all lands and tenements, belonging to *any* public debtor of the state, liable to execution from the commencement of the suit of the state, in whatever hands or possession they may be found. The words of this clause are plain and comprehensive, including within it every debtor to the

state without distinction, and without regard to the manner in which he became indebted.

The title and preamble of an act of assembly are never resorted to in expounding it to ascertain the meaning of the legislature, except where the words in the enacting clause are doubtful, or not sufficiently explicit to express their intention.

This clause contains a particular and positive provision, which is not controled or in any manner affected by any other part of the act.

As soon as the suit was commenced by the state a lien was created on the lands of the debtor, *Philemon C. Blake,* and the state acquired a right of preference over the other creditors of the said *Blake,* who had not, prior to the commencement of the said suit by the state, secured a lien by judgment, mortgage, or otherwise, on the lands of the said *Blake.*

The priority of payment, thus acquired by the state, could not be divested or defeated by any act of the sheriff who sold the land, the debtor, or any other person—And the surplus of the money arising from the sale of the said *Blake's* land, after satisfying the first judgment of the state, remaining in the hands of the defendant, is to be considered as land, and subject to the attachment of the state, issued on the second judgment, in preference to the claim of the plaintiff.

DEMURRER RULED GOOD.