THE STATE OF MARYLAND *vs.* G. HARLAN WILLIAMS, RECEIVER OF THE HOME FIRE INSURANCE CO.

*Priority of State Over Other Creditors of Insolvent Debtor—Award of Costs Against the State.*

The claim of the State against an insolvent insurance company for loss on the State's property covered by the company's insurance and for unearned premiums is not entitled to priority of payment from the receivers of the company as against the claims of other creditors, when no proceedings to enforce the claim were taken before the appointment of the receivers.

Costs cannot be awarded against the State in a civil action when there is no statutory authority for such award.

Appeal from Circuit Court No. 2, of Baltimore City (DENNIS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, and SCHMUCKER, JJ.

*William S. Bryan, Jr., Attorney-General,* for the appellant.

*Charles W. Heuisler* (with whom was *E. Allan Sauerwein, Jr.,* on the brief), for the appellee.

PEARCE, J., delivered the opinion of the Court.

As a result of the great fire in the city of Baltimore on February 7th and 8th, 1904, the Home Fire Insurance Company of Baltimore became insolvent, and upon a bill filed in Circuit Court No. 2, of Baltimore City, by Bernard Wiesenfeld, a stockholder, and Lloyd Wilkinson, State Insurance Commissioner of Maryland, G. Harlan Williams was, with the consent of said company, appointed receiver to settle and close up its business.

Subsequently, the State of Maryland by its Attorney-General, Hon. William S. Bryan, Jr., filed a petition in that cause showing that on April 4th, 1902, said insurance company issued a policy of insurance to the State of Maryland insuring certain public buildings described in said policy, in the amounts specified therein, from noon of April 9th, 1902, to noon of April 9th, 1907, in consideration of a premium of $1,052.80 paid by said State to said company; that among the public buildings so insured were three of the State Tobacco Warehouses all of which were destroyed in said fire, and upon which the aggregate insurance under said policy was $17,500; that the State had furnished due proof of loss to said receiver, who had accepted the same; that upon the appointment of said receiver, on the ground of admitted insolvency, all the outstanding policies of insurance issued by said company were rescinded and annulled, and the State of Maryland became entitled to the return to it by said receiver of the unearned premium paid by it upon the policy upon said State Tobacco Warehouses, and that the amount of said unearned premium was the sum of $661.10; that there was due the State of Maryland from the said company, in addition to the above unearned premium, the sum of $17,500, being the amount insured, aggregating $18,161.10, with interest until paid, for which amount the State was entitled to a preference over any and all creditors of said company; and the prayer of the petition was that the receiver be ordered to pay the same out of the first funds coming into his hands as such receiver.

The receiver answered this petition admitting all the alle-

gations of fact therein, except that he alleged the correct amount of the unearned premium was $747.63, but did not admit that the indebtedness carried interest until paid, or that the State was entitled to a preference over any creditor of said company, but submitted these questions to the Court.

The Court, upon consideration, dismissed this petition with costs, and this appeal is taken from that order. An auditor's account was subsequently stated, in which the State was allowed only a *pro rata* dividend on this claim with other creditors, to the ratification of which account the State excepted, and said account was ratified except as to this dividend allowed the State, the question of the State's priority being reserved by the order of ratification, and the receiver having in his hands sufficient funds to pay said claim in full, if finally allowed as a preferred claim. Two questions arise upon this appeal; 1st. Is the State entitled to the preference claimed? 2nd. If not so entitled, was it error to award costs against the State?

We think the case of the *State* v. *The Bank of Maryland*, 6 G. & J. 206, is decisive against the preference of the State. In that case the general principles upon which the preference or priority of the State over other creditors, as against the property of a common debtor, were very carefully considered in an elaborate opinion by Chief Justice Buchanan. The Bank of Maryland, being insolvent, conveyed all its property; funds, rights and credits to trustees for the benefit of its creditors. Before, and on the date of this conveyance, the treasurer of the Western Shore of the State of Maryland had on deposit in said bank the sum of $50,089.96 of the public moneys of the State, and after the date of said conveyance filed a bill in equity against the bank and its said trustees, claiming to be preferred in payment of said sum out of the funds in the trustees hands, but this preference was denied and the bill was dismissed. The Court said: "In *State* v. *Rogers and wife*, 2 H. & McH. 198; *Murray and Samson* v. *Ridley*, 3 H. & McH. 171, and *Contee* v. *Chew's Adms.*, 1 H. & J. 417, it was held that at common law the State had a preference, and a right to

be first paid *out of the estates of deceased persons,* where no liens stood in the way.    These cases were decided in the late general Court and were not appealed from, but acquiesced in by the parties contesting the right.    And in the *State* v. *Buchanan,* 5 H. & J. 317, and *Dashiel v. The Attorney-General,* 5 H. & J. 392, it was decided by this Court that the common law was adopted by the Third Article of the Bill of Rights 'so far at least as it was not, inconsistent with the principles of that instrument and the nature of our political institutions.' It is too late therefore, at this day, to deny the State's right at common law, to have its debt first paid *out of the property of its debtor remaining in his hands,* and no lien standing in the way.    For notwithstanding all that has been said in disparagement of this right of priority, it is not perceived to be inconsistent with the principles or spirit of our political institutions.    It does not indeed exist here with all the incidents to the royal prerogative right in England.    We have not the writ of protection, nor the extent in chief, or in aid.    And the priority of the State is a rule only in the distribution of the property of the debtor, requiring the debt due to the State to be first paid, where the individual creditor has no antecedent lien overreaching it."    JUDGE BUCHANAN then proceeded to inquire whether that was a case in which the State's priority attached, or whether it had been defeated by the act of the bank, and in considering that question said:    "The debt due from the bank to the State is a debt on simple contract only and not a lien, as must be conceded.    The State therefore having no lien on the property covered by the deed of trust, but a priority only in the payment of its claim, if that priority has not been lost, it is subject, claiming under the common law, to the same common law rule applicable to the royal prerogative right of priority in England, of the same description.    That right in England is enforced by the process in the writ of extent in chief, or in aid, according to circumstances, and may be here by proceedings known to our Courts. *But in either case to make it available, the proceeding must be resorted to, before other vested rights to the property sought to be*

*subjected to the claim, are acquired."* In support of this state-
ment of the law he cites 2 *Tidd's Practice,* 1098, 1099, where
it is said, "When goods are *bona fide* sold, or *fairly assigned*
by the King's debtor to trustees for the benefit of his credit-
ors, *before the teste of the extent,* they cannot be taken under
it, even though in the latter case the debtor was a trader
within the bankrupt laws, and the assignment was an act of
bankruptcy." And Mr. Tidd is sustained by the cases of
*Braddock* v. *Watson,* 2 Exchequer Chamber, p. 6, and *Giles*
v. *Grover* (House of Lords cases), 1 Clark & Finelly, 72,
cited and commented on by JUDGE BUCHANAN. In the latter
case LORD CHIEF JUSTICE TINDAL states the controlling prin-
ciple thus: "The actual sale of the property seised under the
writ issued at the suit of the subject forms the dividing line,
so that where the sale is complete before the awarding of the
crown process, the property is protected therefrom, but where
it is not completed, the property may be seised thereunder."
This language is in exact accord with the careful and accurate
expression of JUDGE BUCHANAN when in the passage above
quoted he limits the State's priority to *"the property of its
debtor remaining in his hands,"* and where in a later passage
in the same opinion, he says, "If the property be fairly and *bona
fide* changed, or the right of the individual creditor be com-
pleted before the extent, either by sale under a *fi. fa.* or a
valid conveyance to him, or to a trustee for his benefit, the
extent coming afterwards will be unavailing, there being no
point of time at which the two rights were in conflict, and
nothing for the extent to act upon, after the property ceases
to be the property of the debtor."

There is no conflict or inconsistency between that case and
any of the cases cited by the learned Attorney-General in his
argument in this case.

The case of *Davidson* v. *Clayland,* 1 H. & J. 546, was not
a case of preference or priority generally, but of a *statutory lien,*
and that lien restricted to the debtors *lands,* and not extended
to his personal property as well.

In *State* v. *Bank of Maryland,* p. 230, *supra,* the Court

points out the futility of attempting to assimilate the condition of the bank in that case, after the execution of the deed, to that of a deceased debtor, where the executor or administrator takes the funds of the deceased to be distributed according to law, *subject to such preferences as the law allows.*

Nor is there any conflict with the law as stated by Mr. Alexander in his note on p. 13 of Alexander's British Statutes, in which he says: "It was an established rule of the common law that where the King's right and that of a private subject met at one and the same time, the King's should be preferred;" nor with the case of *Green's Estate,* 4 Md. Ch. 275, in which two judgments were rendered against Green in his lifetime on April 17th, 1837, one at the suit of the State, the other at the suit of Nicholas Watkins, and the State was held entitled to priority of payment out of the proceeds of sale of his real estate. The entry of these two judgments on the same day and while the property remained the property of the common debtor, clearly illustrates what is meant by the meeting of two conflicting rights at the same time.

We do not perceive any reason why any distinction should be made between the effect of such a conveyance as was made in the case of *State* v. *Bank, supra,* and the decree in this case, passed upon a bill praying the dissolution of an insolvent corporation, in which cases the receivers appointed by a Court under sec. 382 of Art. 23 of the Code are vested with all the estate and assets of every kind belonging to such corporation from the time of their qualifying as receivers, and shall be trustees thereof for the benefit of the creditors of such corporation and its stockholders. For the reasons given we are of opinion the priority of the State was properly denied.

An examination of the authorities has satisfied us that costs cannot properly be awarded against the State in civil actions, in the absence of a statute giving express authority to render such a judgment. *State* v. *Greenwall,* 4 G. & J. 417; *U. S.* v. *Barker,* 2 Wheaton, 395; *The Antelope,* 12 Wheaton, 550; *Stanley* v. *Schwalby,* 162 U. S. 272; *Sandberg* v. *State,* 113 Wis. 539, declaring that the doubt expressed in *Noyes* v.

*State,* 46 Wis. 250, as to civil actions to be unfounded. We have been referred to *State* v. *Maryland Agricultural Association,* 98 Md. 223, as authority for the allowance of costs against the State. The bill in that case was dismissed by the Circuit Court without giving costs against the State, and their allowance in this Court upon affirming the decree was through inadvertence. This opinion, however, will remove any question as to the propriety of such allowance in future cases.

The order appealed from is modified by striking therefrom the award of costs, and as so modified is affirmed.

(Decided June 23rd, 1905.)