[Civil No. 2034.   Filed April 12, 1922.]

[205 Pac. 915.]

In the Matter of the Receivership of the CEN-
TRAL BANK OF WILCOX, STATE OF
ARIZONA, Appellant, v. HERBERT LOW-
DERMILK, Appellee.

1. DEPOSITARIES—MONEY DEPOSITED BY STATE AND BEARING INTEREST
   IS TO BE USED BY BANK, AND THEIR RELATION IS THAT OF CREDI-
   TOR AND DEBTOR.—The state's relation to its selected and qualified
   depositaries is that of creditor and debtor, and its deposit is a
   general and not a special one, and, from the very terms upon
   which the deposit is made, it is contemplated that the money shall
   be lent out and handled by the bank in the same manner as
   moneys of any other depositor, as the bank would have to do to
   enable it to pay the interest thereon agreed and fixed by law.

2. BANKS AND BANKING—STATE HAVING PROVIDED AGAINST LOSS OF
   ITS DEPOSITS IS NOT PREFERRED CREDITOR.—The state is not a
   preferred depositor in a bank by right of sovereign prerogative,
   under the common-law rule to secure its revenues, since by Civil
   Code of 1913, paragraphs 4637–4655, it has provided for the re-
   quiring of a bond to secure its deposits, which right is accorded
   to no other depositor, and is endowed further by paragraphs 284–
   305 with visitorial power from the state's superintendent of banks.

APPEAL from a judgment of the Superior Court
of the County of Cochise.  A. M. Sames, Judge.  Af-
firmed.

Mr. W. J. Galbraith, Attorney General, and Mr.
George R. Hill, Assistant Attorney General, for the
State.

Mr. John C. Gung'l, for Appellee.

ROSS, C. J.—From the stipulation of facts it
appears the Central Bank of Willcox was, on Janu-

---

2.   On common-law priority of state or United States in payment
from assets of debtor, see notes in 29 L. R. A. 227, 242; 46 L. R. A.
(N. S.) 260; L. R. A. 1918A, 398; Ann. Cas. 1916B, 1265.

ary 10, 1921, by the state superintendent of banks, ordered closed, and that thereafter, on a hearing before the court, ordered into involuntary liquidation and the appellee appointed receiver of its property. It appears that at the time of the appointment of the receiver there was on deposit in the name of the state treasurer the sum of $22,500, belonging to the state, which sum had been placed therein during the year 1919; that on June 21, 1919, the Central Bank of Willcox executed to the state of Arizona its bond signed by the Central Finance Corporation as surety to secure the repayment of deposits to the state, and that the Central Finance Corporation is unable to pay the said bond or any part thereof; that the assets of the bank are not sufficient to pay more than ten per cent of the total deposits.

On October 29, 1921, the Attorney General, in behalf of the state, filed a petition in the lower court praying that the receiver be restrained from distributing the available assets of the bank as dividends pending a hearing thereon as to whether or not the state was entitled to its deposit in said bank before any distribution of the assets thereof was made by the receiver. The receiver answered petition admitting all the allegations therein, but demurred on the ground that the facts stated did not constitute a cause of action. Upon a hearing the court sustained the demurrer and dismissed the state's petition and prayer for preference in the distribution of the bank's assets.

The sole question on this appeal is:

"Whether or not the state of Arizona is a preferred creditor and as such entitled to have its claim paid in preference to the depositors and other creditors."

Title XLIV, Civil Code of 1913, paragraphs 4642–4653, inclusive, contains the provisions of the law

prescribing the duties of fiscal officers with reference to the keeping, lending, and paying out of public moneys of the state and counties. In the case of state moneys, the duty of selecting depositaries is placed upon the Governor, the treasurer, and the auditor. The depositaries may be state or national banks and must have a paid up capital stock of not less than $10,000. The depositary must qualify by giving its bond to the state signed by a surety company or by individuals possessing the qualifications required by law in case of official bonds, or it may deposit with the state treasurer in lieu thereof interest-bearing bonds of the United States, the state, county, city, road or school districts of the state. If the designated depositary tenders to the state its bond with sureties, it is made the duty of the Governor, treasurer and auditor of the state to ''certify in writing thereon that they have made diligent personal investigation as to the sufficiency of the sureties thereon, and are satisfied that such bond is amply sufficient to protect the interests of the state'' (section 4645), and at the time approve the bond. It is provided that—

''It shall be the duty of the state treasurer, upon the receipt of such bond, . . . to forthwith deposit with the bank or banks, executing the same, the public moneys then in his possession. . . . '' Section 4647.

The depositaries are active or inactive according to designation by the Governor, the treasurer, and the auditor. The difference between these depositaries is that the active one's account shall at all times be subject to draft for the purposes of meeting current expenses of the state and shall pay interest on the daily balances at not less than two per cent; whereas, the inactive depositary shall not be subject to daily draft and shall pay interest at a

higher rate fixed by the statute. It will be seen that the legislature has devised a plan or scheme quite comprehensive and complete by which the public moneys of the state may be loaned at interest, and has with care and propriety conferred upon three of its highest administrative officers the power and duty to select and qualify state and national banks as such depositaries. The treasurer is forbidden to deposit with any depositary any excess over the amount of the bond or security furnished.

The learned Attorney General plants the right of the state to a preference squarely upon the rule of the common law that gave to the King of England a preference of payment, over other creditors, out of an insolvent debtor's estate. It is the claim that this royal prerogative enjoyed by the rulers of the mother country has descended to the various states in their sovereign capacity. The United States has never claimed a preference right to collect its debts from an insolvent or failing debtor by reason of any succession to the prerogative right exercised by the ruler under the common law, but has always provided for such preference by statute. As was said in *United States* v. *Bank of North Carolina,* 6 Pet. 29, 8 L. Ed. 308:

"The claim of the United States, however, does not stand upon any sovereign prerogative, but is exclusively founded upon the actual provisions of their own statutes."

Some of the states of the Union claim to have succeeded to the sovereign prerogative and exercise it under the common law without any legislation in aid of the right. Others deny the state's right to the preference under the common law as being antagonistic to the cardinal objects of a free government. Many of the cases, those denying the right and those sustaining the right to preference, are to be found in the following

cases: *Ætna Accident & Liability Co.* v. *Miller,* 54 Mont. 377, L. R. A. 1918C, 954, 170 Pac. 760; *State* v. *First State Bank,* 22 N. M. 661, L. R. A. 1918A, 394 (annotated), 167 Pac. 3; *Page County* v. *Rose,* 130 Iowa, 296, 8 Ann. Cas. 114 (annotated), 5 L. R. A. (N. S.) 886, 106 N. W. 744; *State* v. *Williams,* 101 Md. 529, 109 Am. St. Rep. 579, 4 Ann. Cas. 970 (annotated), 1 L. R. A. (N. S.) 254, 61 Atl. 297; *Phillips* v. *Yates Center Nat. Bank,* 98 Kan. 383, L. R. A. 1917A, 680 (annotated), 158 Pac. 23; *Re Carnegie Trust Co.,* 206 N. Y. 390, 46 L. R. A. (N. S.) 260 (annotated), 99 N. E. 1096.

In some of the states, as in the case of the United States, the preference is statutory. *Bent* v. *Hubbardston,* 138 Mass. 99; *Baxter* v. *Baxter,* 23 S. C. 114; *State* v. *Dickson,* 38 Ga. 171.

In those jurisdictions where the succession to the prerogative right is recognized it is accepted with all the limitations of the common law. The preference must be exercised while the debtor's property is still in his hands, and it cannot be exercised against prior liens. *State* v. *Williams, supra; State* v. *First State Bank, supra.*

The right to exercise a preference out of the assets of an insolvent debtor, whether founded upon the written or unwritten law, is not so much for any personal advantage to the sovereign, as upon motives of public policy in order to secure an adequate revenue to sustain the public burdens and discharge the public debts. *United States* v. *Bank of North Carolina, supra.* In other words, the necessities of the government are the only justification for preferring the state over all other creditors.

Bearing in mind that the object of such preference is to secure the state in its revenues, if the legislature has adopted other means to attain the purpose, then the reason for applying the common-law rule of

the sovereign prerogative, as has been done in some jurisdictions, does not exist in Arizona, even though the common law is by statutory adoption a part of the laws of the state when not inconsistent with the Constitution of the United States or the Constitution or laws of the state or established customs of the people of the state.  Paragraph 5555, Civ. Code. We think the plan for lending and safeguarding the public moneys of the state and counties provided for in title XLIV, Civil Code, *supra*, in allowing the state to exact security from the depositary, whereas no other depositor or patron of the bank is given such privilege, must have been intended as a substitute for the common-law prerogative.  By this plan the state is preferred in this: It may participate with all other creditors in the distribution of the assets of the insolvent and, in addition thereto, for any deficiency, have recourse to its security.  If it has taken interest-bearing bonds of the United States or the state or any municipality thereof, these may be subjected to the payment of the balance, or, if the depositary has given personal security or secured the deposit by a surety bond, these may be followed. The state at all events has every reasonable and fair opportunity to guard its funds, and, in the absence of unexpected misfortune or lapse of duty, a denial of a preference to it, over other creditors, would be harmless.  Thus the reason for the common-law prerogative rule would disappear, and likewise the rule.

As was well said in *Smith* v. *Arnold,* 165 Ky. 214, 176 S. W. 983:

"In the instant case, the statute not only authorizes but requires the master commissioner and receiver of the court to deposit the funds held by him, as such, in the bank designated by order of the court; and a bond is provided for the purpose of securing such deposits.  The law and a sound public policy

will not favor preferences in the liquidation of an insolvent bank; and, in the absence of statutory provisions to the contrary, we see no reason why the funds deposited in the designated depository by the master commissioner and receiver, in obedience to the statute should stand on any higher ground than the funds of the other depositors. It was to protect the funds so deposited that the bond was required of the bank; and we will not countenance an effort to relieve this bond by an attempt to obtain a priority in the disbursements of the bank's assets, to the prejudice of the other depositors.''

It should be borne in mind that the state's relation to its selected and qualified depositaries is that of creditor and debtor. Its deposit is a general one, not special. From the very terms upon which the deposit is made it is in contemplation of everybody concerned that the money shall be loaned out and handled by the bank in the same manner as the moneys of any other depositor. Indeed, the bank would have to use the money to enable it to pay the interest agreed upon and fixed by law.

''As a rule, when money is deposited in a bank, title to such money passes to the bank. The bank becomes the debtor of the depositor to the extent of the deposit, and, to that extent, the depositor becomes the creditor of the bank. *Allibone* v. *Ames,* 8 S. D. 74, 33 L. R. A. 585, 68 N. W. 165. Such deposit then constitutes a part of the assets of the bank, and, in case of insolvency, belongs to the creditors of the bank in proportion to the amount of their respective claims. Exceptions to this rule are: First, where money or other thing is deposited with the understanding that that particular money or thing is to be returned to the depositor; second, where the money or thing deposited is to be used for a specifically designated purpose; and, third, where the deposit itself was wrongful or unlawful.'' *City of Sturgis* v. *Meade County Bank,* 38 S. D. 317, 161 N. W. 327.

It is plain to be seen that the present case does not fall within any of the above exceptions.

After a somewhat careful examination of the cases, we think the following statement in *Kies* v. *Wilkerson,* 101 Wash. 340, 172 Pac. 351, is not far from the mark:

"There is a conflict of opinion among authorities as to whether, in the absence of statute, there exists in any political subdivision a common-law right to have its debts paid to it in preference to other creditors when the debtor is insolvent. But, as applied to insolvent banks in which deposits of public money have been made, the better rule seems to be that, in the absence of statute or a showing of facts sufficient to create a trust, a claim for public money has no preference over the claims of the general creditors of the bank, but stands on the same footing with them. 3 R. C. L., § 182; note to *Page County* v. *Rose,* 8 Ann. Cas. 116, and cases there cited."

In addition to being favored over other creditors and depositors by requiring security of a depositary approved by the Governor, treasurer, and auditor, the state is endowed by the statute, paragraphs 284–305, Civil Code, with visitorial powers through the state superintendent of banks. This officer is authorized to visit and investigate state banks as often as he may choose, and such banks are compelled to report to him at least three times a year their financial condition. With this double opportunity to keep advised of the responsibility and financial condition of its depositaries, it would seem a very harsh, if not intolerable, rule to permit the state under a claim of preference, when such institution becomes embarrassed or insolvent, to reach its sovereign hand into the fund, that ordinarily is distributed equally among all the creditors, and take it all.

We conclude that the ample provisions of the statute law in requiring security of the state's de-

positaries, and subjecting them to frequent inspection and examination by the state's agent, is, in effect, a renunciation of the state's common-law preference, if it ever had any, and that the state's claim against the insolvent bank's assets is equal, but not superior to, the claim of other creditors.

The order and judgment of the lower court is affirmed.

McALISTER and FLANIGAN, JJ., concur.