## NATIONAL SURETY CO. v. PIXTON, State Bank Com'r.

No. 3783.   Decided June 21, 1922.   (208 Pac. 878.)

1. BANKS AND BANKING—PREFERENTIAL RIGHTS OF STATE BECAME LOST WHEN ASSETS OF BANK PASSED INTO POSSESSION OF BANK COMMISSIONER. Where the assets of an insolvent bank, having state funds on deposit, passed into the possession of the State Bank Commissioner before the state exercised the right of priority that comes to it from the common law as a sovereign right, such right was lost, and was not enforceable by the surety who guaranteed the repayment of the funds.

2. BANKS AND BANKING—COMPELLING BANK TO SECURE REPAYMENT OF STATE FUNDS HELD WAIVER OF PREFERENTIAL RIGHTS. The State, by authorizing the State Treasurer to deposit state funds in certain banks and compelling him to require the bank to give a bond to secure the repayment of the funds, clearly indicated that it did not intend to assert the right of priority that comes to it from the common law as a sovereign right.

Appeal from District Court, Seventh District, Grand County; *F. E. Woods*, Judge.

Action by the National Surety Company against Seth Pixton, State Bank Commissioner. From a judgment of dismissal, plaintiff appeals.

AFFIRMED.

*A. E. Moreton*, of Salt Lake City, for appellant.

*Patterson & Constantine*, of Moab, for respondent.

FRICK, J.

The plaintiff, in its complaint, after alleging all of the necessary matters of capacity and inducement, in substance alleges that in March, 1917, the State Treasurer of the state of Utah was about to deposit in the Moab State Bank, of Moab, Utah, large sums of the state's funds; that before mak-

ing the deposit of said state funds the State Treasurer was by law required to take, and that he did take and receive, a bond in the sum of $20,000 as security from said bank for the repayment of said funds; that upon application of said bank the plaintiff, on March 6, 1917, duly made and delivered, as surety for said bank, its bond in the sum of $20,000, which was duly accepted by the Treasurer of the state of Utah as security for the repayment of the state funds deposited and to be deposited in said bank; that on the 3d day of January, 1921, "there was and now is on deposit in said" bank the sum of $19,984.27 of the funds of the state of Utah; that on the 10th day of January, 1921, one N. T. Porter, the Commissioner of Banks of the state of Utah, examined into the financial affairs of said bank, and, upon such examination, found that said bank was in an unsafe condition financially, and that said commissioner on said day "took possession of its books, records, and assets of every description"; that on the 1st day of April, 1921, the defendant, Seth Pixton, "succeeded the said N. T. Porter as Commissioner of Banks for the state of Utah," and the latter has since that time continued to be and now is the Commissioner of Banks, "and is now in charge of and in the possession of said bank, its books, records, and assets of every description;" that on the 21st day of February, 1921, "upon demand of the state of Utah through its duly authorized officers," the plaintiff, pursuant to the terms and conditions of the bond aforesaid, "and because of the breach of the same by said bank, was compelled to pay, and did pay, to and for the benefit of the state of Utah," the sum of $19,984.27, "the same being and representing repayment to it * * * of the moneys of the state of Utah so on deposit in the said bank"; that after making the payment as aforesaid "an assignment of all claims of the state of Utah to the amount of $19,984.27 upon and against said Moab State Bank of Moab, Utah, by and because of the deposit of the aforesaid moneys of the state of Utah in said Moab State Bank," was made to the plaintiff; that after receiving said assignment the plaintiff "did duly present to the said Seth Pixton, State Bank Commissioner, a proof of claim,

asserting the priority of the debt of the state of Utah and the right to preference in payment of said debt out of the funds of said bank, and claiming the right to have such payment made to it because of its subrogation to the rights of the state of Utah''; that said Commissioner disapproved plaintiff's right to priority, and denied its right to preference; that by reason of the surety bond and the payment of the moneys as hereinbefore stated plaintiff ''has been subrogated to all the rights of the state of Utah''; that the state of Utah, by virtue ''of its sovereignty and of the preferences, privileges, and prerogatives appertaining thereto,'' is entitled to full payment in preference to all other creditors of said bank; ''that during all of the times hereinbefore mentioned there has been and now is in the possession of said Seth Pixton, Bank Commissioner of the state of Utah, sufficient funds of said bank with which to pay in full'' the said $19,984.27 due to the state of Utah, which sum, by reason of the facts hereinbefore stated, should be paid to the plaintiff, and which said Seth Pixton has refused and still refuses to pay.

The plaintiff prays judgment that its preferential right be established and declared, and that the court order that the sum of $19,984.27 be paid to it out of the funds of said bank now in the possession of said Seth Pixton, defendant herein.

Demurrers, both general and special, were interposed to the complaint by the defendant. The court sustained the general demurrer, and, the plaintiff declining to further amend its complaint, but electing to abide by the allegations therein contained, the court entered judgment dismissing the action, from which this appeal is prosecuted.

We remark that plaintiff's counsel at the time of the oral argument disclaimed any right by virtue of the assignment alleged in the complaint, but based plaintiff's right of recovery upon the sole ground that the state of Utah, by reason of its sovereignty, was by virtue of the common law in force in this state a preferred creditor of the insolvent bank, and that the plaintiff, by reason of its relationship as surety and the payment of said sum of $19,984.27 to the State Treasurer

of Utah, became subrogated to all of the preferential rights of the state of Utah, and therefore is entitled to have said sum paid to it by the Commissioner of Banks out of the assets of said insolvent bank in preference to the rights of all other creditors. In view that nothing is predicated upon the assignment, further reference will not be made thereto.

Counsel for plaintiff therefore insists that the district court erred in sustaining the general demurrer to the complaint and in denying the relief prayed for. Upon the other hand, the defendant, through his counsel, contends: (a) That the plaintiff, in making and delivering the surety bond, became the surety for the State Treasurer personally, and not for the state of Utah; (b) that the state of Utah did not and does not have any priority over general creditors; (c) that if the state of Utah is entitled to priority by virtue of its sovereignty such right, nevertheless, is not transferrable, and hence plaintiff is not subrogated thereto; and (d) that if the state of Utah had the right of priority, by reason of its conduct, and in view of the facts and circumstances disclosed in the complaint, it has lost such right, and therefore if the state cannot enforce such right plaintiff cannot. Other reasons why plaintiff cannot recover in this action are urged, but it is not necessary to refer to them here.

Plaintiff's counsel, in support of his contention that by virtue of its sovereignty the claim of the state of Utah has priority over all other claimants against the insolvent bank, cites and relies upon the following cases: *State* v. *Foster*, 5 Wyo. 199, 38 Pac. 926, 29 L. R. A. 226, 63 Am. St. Rep. 47; *In the Matter of the Carnegie Trust Co.*, 206 N. Y. 390, 90 N. E. 1096, 46 L. R. A. (N. S.) 260; *State* v. *First State Bank, etc.*, 22 N. M. 661, 167 Pac. 3, L. R. A. 1918A, 394; *State* v. *People's S. B. & T. Co.*, 23 N. M. 282, 168 Pac. 526; *Ætna Acc. & Lia. Co.* v. *Miller*, 54 Mont. 377, 170 Pac. 760, L. R. A. 1918C, 954; *Booth & Flinn* v. *Miller*, 237 Pa. 297, 85 Atl. 457; *Seay* v. *Bank of Rome*, 66 Ga. 609; *Booth* v. *State of Georgia*, 131 Ga. 750, 63 S. E. 502.

In all of the foregoing cases it is held that by virtue of the common law of England the king, by reason of his sovereign-

ty, had preference over all other rights, and in view that the common law of England as it existed at and prior to the year 1775 was adopted by the different states of the Union in which the cases were decided that the claims of the creditor states by virtue of their sovereignty had preference over all other claims. In those cases it is also held that where the claims of the state have been guaranteed by a surety, such surety, after paying the state's claim, is subrogated to all of the rights of the state, and that the claim of the surety has preference over all other claims. It is, however, further held in all of the foregoing cases, except one, or perhaps two, that the preferential right of the state may be waived or lost, and in case it is waived or lost the state can recover only its pro rata share of the insolvent estate the same as any other creditor, and that the surety can recover no more than the state could have recovered. In *Booth & Flynn* v. *Miller,* supra, the Supreme Court of Pennsylvania, in speaking of the doctrine that the state may waive or forego its right, in the course of the opinion, says that the state "may forego its rights as a sovereign power and place itself on the same footing as one of its citizens. * * *" True, the court points out that ordinarily a sovereign right must be expressly waived, and a waiver or abandonment thereof is not presumed. It cannot be disputed, therefore, that the right of preference may be lost by the sovereign state. It is further held in all of those cases, except one or two, that, in case the title to property or assets in which by virtue of its sovereignty the state claims preferential rights has passed from the debtor, the preferential right is lost. The rule governing in such circumstances is perhaps as clearly and as tersely stated in the headnote to the case of *State* v. *People's S. B. & T. Co.,* supra, as in any case, and for that reason we here insert the headnote in full. It reads:

"Upon the appointment of a receiver of an insolvent banking corporation, having on deposit state funds, the state loses such priority as comes to it from the common law as a sovereign right, by reason of the divestiture of title which takes place upon the appointment of such receiver."

In that case it was accordingly held that in view that the

assets of the insolvent bank had passed into the possession of the receiver before the state had exercised its preferential right such right was lost, and that neither the state nor the surety could enforce the right.

It is a singular coincidence that in all of the foregoing cases, except the case of *Ætna Acc. & Lia. Co.* v. *Miller,* supra, the courts have found some reason for holding that the preferential right of the state had been lost and hence was not enforceable. In all of the foregoing cases it is conceded that there are decisions which hold that the royal prerogative of the King of England is contrary to the spirit of our form of government and has no place in our jurisprudence. The holding of the federal courts is to the effect that, in the absence of a statute in which the preferential right is declared, it does not exist. In the following, among other cases, it is held that the preferential right does not exist as a part of the state's sovereignty or otherwise, unless it is so declared by statute. *Brown* v. *American Bonding Co.,* 210 Fed. 844, 127 C. C. A. 406. That case reversed the decision in *American Bonding Co.* v. *Reynolds* (D. C.) 203 Fed. 356; *Commissioner of Banking* v. *Chelsea Svgs. Bank,* 161 Mich. 691, 125 N. W. 424, and 127 N. W. 351; *Freeholders, etc.,* v. *State Bank, etc.,* 29 N. J. Eq. 268, affirmed in 30 N. J. Eq. 311-339; *State of Maryland* v. *Bank, etc.,* 6 Gill & J. (Md.) 205, 26 Am. Dec. 561. That case is followed in *State* v. *Williams,* 101 Md. 529, 61 Atl. 297, 1 L. R. A. (N. S.) 254, 109 Am. St. Rep. 579, 4 Ann. Cas. 970. It is not necessary to refer to the other cases.

In *State of Maryland* v. *Bank,* supra, it is held that, although it were held that the right exists, yet, in view that the insolvent bank had made an assignment for the benefit of its creditors, the right was nevertheless lost.

The reasons why the royal prerogatives of the King of England were only in part adopted by the states of this country are well and clearly stated by the vice chancellor in 29 N. J. Eq., supra. Any one desiring information respecting that subject will find the vice chancellor's opinion both illuminating and interesting.

The opinion in the case reported in 161 Mich. 691, 127 N. W. 351, 28 L. R. A. (N. S.) 479, to which we have referred, also strongly protests against the doctrine that the royal prerogatives of the King of England have been adopted by the state of Michigan. In concluding the opinion on rehearing in that case the writer makes the following observations:

"A royal prerogative is an arbitrary power vested in the executive, a power or will which is discretionary and uncontrolled (2 Bouvier [Rawle's Rev.] p. 730), and in some, if not all, of the decisions which have been examined the term 'prerogative' is evidently employed in the sense that it is an arbitrary power of the state, as distinguished from a sovereign power, which becomes effective in exercise through legislation. It is clear that no one may complain because the sovereign has not exercised a discretionary and arbitrary right. The argument made for appellant is thus completely answered.

"We do not doubt that the state may provide by legislation for a preference of payment of demands due to the state. The Legislatures of some of the states and the Congress of the United States have, to some extent, given a preference to demands due to the government. The right to do this is inherent in the state. It is exercised in this state, in a limited way, in the collection of the revenues. It has at all times been, as it now is, within the power of the Legislature to make such provisions for state priority as seemed to be expedient. It has made none for cases like the one at bar. The form of our government, the undoubted power of the Legislature in this behalf, furnish reasons for saying that in adopting the applicable rules of the common law as a part of the law of the state, the people did not adopt and thereby assert an arbitrary, prerogative right to priority of payment of its debts, which was recognized by the common law. In any event, the state has never asserted, and does not now assert, such a right."

It may be stated that the weight of authority seems to be to the effect that by virtue of its sovereignty a state has the right of priority over general creditors. As we have seen, however, in nearly all of the cases which so hold, it is also held that the state had lost the preferential right for the reason that the insolvent estate had passed into the hands of a receiver, or that the assignee under an assignment for the benefit of creditors had taken possession of the assets of the insolvent estate before the state asserted its preferential right.

In one or two of the cases cited the assets of the insolvent bank had been taken into the possession of the Bank Commissioner or the officer who by law was placed in charge of the banking affairs of the state before the state asserted its claim or preference, and it was held that the preferential right was lost.

It will be observed that the plaintiff in its complaint alleges that the Bank Commissioner had examined into the financial affairs of the bank in question, and upon such examination had found the bank's financial affairs in an unsafe condition and that it could not safely "continue to transact a banking business"; that for that reason said Bank Commissioner took possession of all the property and assets of the bank; and that the possession thereof was thereafter transferred to his successor, who is the defendant in this action. It is true that under the law as in force on the 10th day of January, 1921 (Laws 1911, c. 25), when the Bank Commissioner took possession of the books and assets of the bank, it was his duty to have a receiver appointed in order to fully administer and wind up the affairs of the insolvent bank. It is, however, also true that on the 16th day of February, 1921 (Laws 1921, c. 23), and while the old Bank Commissioner had possession of the books and assets of the bank, and before a receiver could have been appointed, the law of this state was changed so as to authorize the Bank Commissioner to wind up the affairs of the bank without the appointment of a receiver. In the complaint it is alleged that all of the assets of the bank were by the old Bank Commissioner delivered into the possession of the new Bank Commissioner, who was appointed under the new law, and that the new Commissioner thereafter administered the insolvent estate. Indeed, the complaint shows that all of the transactions of the plaintiff were with the new Bank Commissioner, and that where any demands were made at all they were made upon him. It is also made to appear from the complaint that the new Bank Commissioner, and he alone, has administered and is administering the insolvent estate under the law adopted in February, 1921. While it is true that under our

statute plaintiff's rights accrued under the law as it stood when the Bank Commissioner first took possession of the assets of the bank, and that its rights must be measured as of that time if it so insists, yet it is also true that plaintiff, as any one else, had a right to waive strict compliance with the provisions of the law as then in force, and could proceed under the amendments adopted in February, 1921. That the plaintiff and all concerned proceeded under and relied on the law that went into effect in February, 1921, and while the bank's affairs were in process of liquidation by the Bank Commissioner, the allegations of the complaint leave no room for doubt. The parties thus having proceeded under the new law, we have no alternative save to do likewise. Moreover, the legal effect, so far as this case is concerned, would not be essentially different whether the provisions of the old or those of the amended Banking Act were followed. In either case the assets of the bank had passed beyond the bank's control, and had passed into the possession and control of the officer whose duty it was to administer the assets of the insolvent bank for the benefit of its creditors, which included all the depositors having money on deposit when the bank's doors were closed and possession of its assets taken, as hereinbefore stated. All of the foregoing proceedings were had before any claim of preference was made on behalf of the state of Utah. Indeed, the state never asserted such a claim, and the Bank Commissioner, as appears from the complaint, expressly renounced such a right upon the part of the state. Moreover, all of the authorities, except one, the case from Montana, hold that the preferential right of the state, if it had such a right, had ceased to be effective when the plaintiff attempted to assert the right as the surety of the insolvent bank. In view, therefore, that the assets of the bank had passed into the hands of the Bank Commissioner for the purpose of winding up the bank's affairs for the benefit of its creditors, the legal effect of what was done is precisely the same as though a receiver had been appointed or an assignment for the benefit of creditors had been made. To say that the legal effect is not the same is to make a distinction

where there is no substantial difference. The law always looks to the substance and purpose of things rather than to mere form. We are of the opinion, therefore, that although it be conceded that in this state the right of priority by virtue of the common law which has been adopted exists in favor of the state, yet that the right, for the reasons stated, was not enforceable when plaintiff asserted the same.

If, however, we were in error in arriving at such a conclusion, for the reasons stated, there is nevertheless another reason why, in our judgment, plaintiff cannot recover in this action. Under the banking laws of this state, the state, by its acts and conduct, has clearly indicated that it claims no preferential rights over other depositors. While the law authorizes the State Treasurer to deposit the funds of the state in certain banks, it also compelled him to require the bank to secure the repayment of the funds so deposited. If the state were relying upon its preferential right, its funds would be amply secured without requiring any security of that nature. Moreover, in view that the banks of the 2 state are under the direct supervision and control of the State Bank Commissioner, and that he has full knowledge and control of the financial affairs of the banks, no reason exists why surety bonds would be required. Then again, in view that the right of preference had never been asserted by the state either by the adoption of a statute or through the courts under the common law, and unless so asserted the right was doubtful to say the least, as appears from the diversity of the decisions of the courts of the different states, the state could well place itself upon the same footing as other depositors. This, it seems to us, it did by the passing of the banking laws and in authorizing the State Treasurer to deposit the state's funds in banks as others deposit their funds. True, the rights of the sovereign state are not deemed lost or waived unless the waiver is in express terms, yet we cannot see, in so far as the deposit of public funds is concerned, in view of the laws of this state, and especially in view of the state's conduct in the matter before us, how it can be held otherwise than that the state did not intend to assert its pref-

Appeal from Third District

erential rights in those matters, regardless of what its rights in that regard may be, by authorizing the making of a deposit of public funds. In arriving at the foregoing conclusions, we were also impressed with what is said by the Supreme Court of Michigan in the case to which we have hereinbefore referred.

For the reasons stated, the judgment should be, and it accordingly is, affirmed, with costs.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.