[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 456 
On January 23, 1925, a petition for rehearing was granted, and thereafter a reargument was had and the case again resubmitted. We have carefully re-examined the record and have reached the conclusion that the former opinion is correct in so far as it affects the liability of the appellant bondsmen for the moneys held by the Bannock National Bank on general deposit, viz.: the sum of $42,335.04. We will consider whether the obligation of the bond extends to a time deposit of $32,000 waterworks fund money made by the city treasurer March 26, 1919, evidenced by a time certificate of deposit issued by the bank on that date and renewed by succeeding city treasurers.
The depositary bond signed by the principal and sureties on July 7, 1915, contains the following conditions; "Now, therefore, if said Bannock National Bank shall at the beginning of each and every month (1) render to the city treasurer and city clerk a statement in duplicate showing the daily balance of the monies of the city of Pocatello held by it during the month next preceding and the interest thereof, and (2) shall well and truly keep all sums of money so deposited or to be deposited, as aforesaid, and the interest thereon subject at all times to the check and order of the city treasurer of said city of Pocatello, as aforesaid, and (3) shall pay over the *Page 459 
same and any part thereof, upon the check or written demand of said city treasurer, and to her successor in office as shall be by her demanded, and (4) shall calculate, credit and pay said interest, as aforesaid, and shall in all respects save and keep the city of Pocatello, Idaho, and the treasurer thereof harmless and indemnified for and by reason of making such deposit or deposits, then this obligation shall be void and of no effect, otherwise to remain in full force and virtue."
On July 26, 1915, an ordinance was passed by the city of Pocatello, designating certain banks then doing business in said city as depositaries for all funds of the city of Pocatello. The ordinance provides that there shall be charged to the said banks designated as depositaries interest at the rate of three per cent per annum, payable quarterly to the said city on the average daily balances of the moneys of the city held in said banks, which said interest shall be credited quarterly to the account of said city of Pocatello. It requires that each bank shall render to the city treasurer and city clerk a statement in duplicate showing each day's balance of all funds belonging to the city and held in said banks, together with the interest thereon, for the month within which the statement is rendered. It stipulates that all deposits shall be subject to increase or decrease as shall be determined by the city treasurer, and the banks shall pay par value for any draft or warrant drawn by the city treasurer at date of maturity, provided there are sufficient funds on deposit belonging to said city to meet the draft or warrant. This ordinance further directs the city treasurer to deposit in equal and like proportion any and all funds in her possession or under her control and belonging to the city, or any funds which may come under her control, with the banks named in the ordinance, in like amount, upon the passage of the ordinance and the execution by the banks of the bonds therein specified, to make future deposits in like proportion and that she shall check on said banks in like proportion, and *Page 460 
keep as nearly as practicable at all times an equal division of the funds in said banks. The ordinance then requires that each bank therein named shall give to the City of Pocatello a bond in the penal sum of not less than $50,000 to be approved by the council, which bond shall be conditioned upon the payment of interest and the full and faithful performance of the trust imposed by the ordinance. The bond of July 7, 1915, before referred to, was the bond furnished by the Bannock National Bank as one of the designated depositaries, and is the bond upon which this suit is brought. The trial court found, upon sufficient evidence, that the bond was accepted and approved by the city council at a meeting held July 29, 1915.
On February 7, 1918, there was passed by the council and on February 12, 1918, approved by the mayor of the City of Pocatello, an ordinance re-enacting the provisions of the ordinance of July 26, 1915, before referred to, but adding the provision that there might be deposited equally in the depositary banks on time deposit such amounts of money as should be determined upon by the finance committee of the city council, which said sums so deposited should draw interest at the rate of four per cent per annum, credited quarterly, and be withdrawn only upon the signatures of the city treasurer and two members of the finance committee of the council.
On March 26, 1919, the city treasurer, presumably under such authority as the revised ordinance gave, by check signed by herself and countersigned by the mayor, withdrew from the Bannock National Bank $32,000 of waterworks fund money then on general deposit, and deposited the same amount on time deposit in that bank, taking therefor a time certificate of deposit bearing four per cent interest per annum. This certificate of deposit was renewed by succeeding city treasurers and was outstanding when the bank suspended business on May 13, 1921. It is stipulated that the records of the city treasurer show that a check dated March 26, 1919, upon the Bannock National Bank, in the sum of $32,000 was drawn *Page 461 
by the city treasurer and countersigned by the mayor; that such check was duly cashed by said bank, and that a time certificate of deposit was issued for the money so taken out of the general deposit.
The question that confronts us, one that has given more than usual concern, is: "Did the obligation of the bond extend to that portion of the city funds represented by the time certificate?"
The ordinance of July 26, 1915, upon which the city relies, was passed and such selection and designation of the depositary bank was made by authority of Session Laws 1893, page 97, sec. 65, re-enacted as Session Laws 1899, page 192, sec. 69, and continued by the codifier as R. C., sec. 2261, and C. L., sec. 2261, which statute provided that "the treasurer may be required to keep all moneys in his hands belonging to the corporation in such place or places of deposit as may be provided by ordinance, but no such ordinance shall be passed by which the custody of such money shall be taken from the treasurer and deposited elsewhere than in some regularly organized bank, nor without a bond to be taken from such bank in such penal sum and with such security as the council or board of trustees shall direct and approve sufficient to save the corporation from any loss, but such penal sum shall not be less than the estimated receipts for the current year from taxes and special assessments levied and to be levied by the corporation." The enactment of a depositary law has generally been held to be a consent to the relation of creditor and debtor between the municipality and the bank, and it may safely be taken that this statute at the very least authorized a general deposit. (State v. Lowdermilk, 23 Ariz. 574,205 Pac. 915; Lawson v. Baker, (Tex. Civ.), 220 S.W. 260; Henry Countyv. Salmon, 201 Mo. 136, 100 S.W. 20; Cadwell v. King,84 Iowa, 228, 50 N.W. 975; State v. Bartley, 39 Neb. 353, 58 N.W. 172, 23 L.R.A. 67.) And it is not unlawful for the municipality to require that the depositary pay interest. (Mayor of New York v.National Broadway Bank, *Page 462 126 N.Y. 655, 27 N.E. 555; National Surety Co. v. McCormick, 268 Fed. 185; McCormick v. Hopkins, 287 Ill. 66, 122 N.E. 151.) The subject matter of the ordinance of July 26, 1915, was accordingly within the legislative power of the city.
The statute quoted remained the law until Session Laws 1919, chap. 105, effective May 8, 1919, amended it by a minor change in the language and by the addition of the proviso that "the treasurer may be directed and empowered by ordinance, to invest any money in his hands in securities of the United States government, or of the state of Idaho, county bonds, highway bonds, or in local improvement bonds of the city or village for which he is treasurer." This amendment was the first express authority to a municipality to invest any of its moneys, but we do not believe that its enactment was a realization by the legislature for the first time that municipalities had moneys in the nature of sinking funds accumulating for future liabilities, and accordingly a provision whereby they might earn interest, but rather was a response to a request of the federal government for the purpose of expressly authorizing investment in bonds of the Liberty loan and like issues, to which authority was annexed other provisions so that the statute might not be a temporary one only.
That a time deposit, equally with a general deposit, is a true deposit is upheld by general banking practice and by the cases of National Surety Co. v. McCormick and McCormick v.Hopkins, supra. These cases hold that authority to deposit is authority to make a time deposit. The statute of 1893 placed no limitation on the kind of a deposit a municipality could make thereunder; we add no limitation. We are of the opinion that the legislature must have known that sinking funds for the retirement of the bonds authorized by Laws 1891, page 53, would accumulate in the municipal treasury, that such funds ought to earn interest, and therefore left cities and villages free to contract for the payment of interest *Page 463 
by the banks. We think the municipality was authorized to make the best bargain it could in the way of interest on its moneys, and had the power, consistent with its financial requirements, under protection of proper bond, to consent to conditions of repayment such as would be implied from the placing of moneys on time deposit, and we therefore hold that in the instant case the city had authority to place its money on time deposit if properly secured. As a matter of practice, that has been the construction placed upon the statute by municipalities throughout the state.
By the passage of the ordinance of July 26, 1915, the city offered to deposit on general deposit in equal and like proportion in the banks named, any and all funds in the possession of the city treasurer, or which might come into her possession or under her control and belonging to the city, upon each bank furnishing a bond satisfactory to the city, conditioned in the penal sum and as required by the ordinance. The Bannock National Bank furnished the bond of July 7, 1915, conditioned as required by the ordinance that the bank should pay interest at the rate specified in the ordinance and pay over the principal and interest "upon the check or written demand of said city treasurer, and to her successors in office as shall be by her demanded," and upon the bank complying with those conditions then the "obligation to be void and of no effect." Upon the approval of such bond and the deposit of the city's moneys in the Bannock National Bank there then existed a contract between the city and the sureties, the terms of which were stated by the ordinance and bond. The sureties then became obligated for the faithful and full performance by the bank of the contract as contained in the ordinance and bond, and by these instruments properly construed, are the sureties bound.
In United States Fidelity Guaranty Co. v. Board of Commrs.of Woodson County, 145 Fed. 144, 76 C.C.A. 114, 4 rule that is perhaps without exception to-day as *Page 464 
to sureties not for hire is stated as follows: "A surety is a favorite of the law, and never liable beyond the strict terms of his obligation. But his contract is, nevertheless, but an agreement, and, like all other agreements, it must have a just and rational interpretation. The actual intent and meaning of the parties when the agreement was made, deduced from the entire contract, from its subject matter, from the purpose of its execution, and from the situation and circumstances of the parties when they made it" will govern its interpretation. The language of the contract in the present instance and the actual intent and meaning of the parties at the time they entered into it all point to the same thing, viz.: that the city intended a general deposit in the depositary bank payable on demand, and the receipt of a certain rate of interest on average daily balances, and that the sureties intended to assume an obligation for the payment on demand of such general deposit with the accrued interest. Had that remained the situation at all times from July, 1915, on, there would now be no question for the decision of this court. But the city on February 12, 1918, by ordinance provided that moneys of the city might be deposited on time deposit, to bear interest at the rate of four per cent per annum. That this was a material amendment of the ordinance of July 26, 1915, and therefore a material change in the contract of the sureties must be conceded. In the case ofMagee v. Manhattan Life Ins. Co., 92 U.S. 93, 23 L. ed. 699, the court uses the following language: "A surety is a 'favored debtor.' His rights are strictly guarded, both in law and in equity. The slightest fraud on the part of the creditor touching the contract annuls it. Any alteration after it is made, even though beneficial to the surety, has the same effect. His contract, exactly as made, is the measure of his liability, and if the case against him is not clearly within it, he is entitled to go acquit." It is an almost universal rule that sureties not for hire "are never held liable beyond the clear and *Page 465 
absolute terms and meaning of their undertakings; the liability of a surety is not to be extended by implication." (Miller v.Stewart, 9 Wheat. 680, 6 L. ed. 189; Martin v. Thomas, 24 How. 315, 16 L. ed. 689.) The present case is not one where a strict depositary law permitting but one kind of deposit is to be read into the contract, but a case where the amended ordinance permits two kinds of deposit, while the former ordinance under which the bond was given, together with the bond, refers to but one kind of deposit. We will not say that sureties not for hire are liable under any and all circumstances for moneys deposited in the depositary bank, nor will we stretch their obligation beyond that which they voluntarily assumed, and we therefore hold that the bond sued on did not cover time deposits.
In the present instance the amended ordinance of February 12, 1918, was authority for the withdrawal of money from the amount on general deposit in the Bannock National Bank. It was also authority for the city treasurer to place that money on time deposit had there been any bond furnished that would cover time deposits. The $32,000 was lawfully in the hands of the treasurer upon its withdrawal from the general deposit. There was a municipal depositary law or ordinance permitting both a general and a special deposit; there was a designation of a depositary for such time deposits but no qualification by the depositary for such time deposits, in that a bond had not been furnished and accepted that would cover such deposits, and there was a state law authorizing only special deposits where no depositary bond is given. Under the circumstances the treasurer should have redeposited the money on general deposit, to the extent that the depositary bond would cover, and place any excess on special deposit. This she did not do, and the time deposit must be deemed to be a deposit made without the protection of any bond whatever. If we held otherwise we should virtually rule that under every circumstance a depositary bond covers any kind of deposit *Page 466 
in the depositary bank regardless of the terms of the bond and of the depositary law. The facts in this case differ from those in Blaine County v. Fuld, 31 Idaho 358, 171 P. 1138, in that the treasurer here had the lawful custody of the funds upon withdrawal, could thereafter lawfully make both a general and a special deposit, and had the general authority to make a time deposit had there been any qualification by the depositary.
We accordingly hold that the time deposit of $32,000 waterworks fund money is not within the undertaking of the sureties upon the bond in suit; that the bank never acquired title to this money, and that the city's right to recover the $32,000 does not exist as against appellant sureties.
The cause should therefore be remanded, with directions to the court below to modify its judgment in accordance with the views herein expressed, and it is so ordered. No costs are awarded upon this appeal.
Babcock, District Judge, concurs.