In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property and Liquidate the Business and Affairs of the GENERAL INDEMNITY CORPORATION OF AMERICA.

(Claim of INDUSTRIAL COMMISSIONER OF THE STATE OF NEW YORK, Claim No. G–1–SU–395.)

THE SUPERINTENDENT OF INSURANCE OF THE STATE OF NEW YORK, as Liquidator of the GENERAL INDEMNITY CORPORATION OF AMERICA, Appellant; INDUSTRIAL COMMISSIONER OF THE STATE OF NEW YORK, Respondent.

First Department, May 7, 1937.

*Irvin Waldman* of counsel [*Alfred C. Bennett*, attorney], for the appellant.

*Paul Balsam, Assistant Attorney-General*, of counsel [*Joseph A. McLaughlin* with him on the brief; *John J. Bennett, Jr., Attorney-General*], for the respondent.

COHN, J.   Appeal from an order made at Special Term denying the motion of the Superintendent of Insurance of the State of New York, as liquidator of the General Indemnity Corporation of America, for an order confirming the report of a referee.

The controversy presented is whether the State of New York, in the circumstances here, has a right of priority over other creditors to payment of its claim for the principal amount of a surety bond executed by the General Indemnity Corporation of America, a defunct company now in liquidation.

The facts are not in dispute.   The International Reinsurance Corporation (hereinafter called International), a Delaware corporation, desiring to write workmen's compensation insurance in this State, pursuant to statute (Workmen's Comp. Law, § 54, subd. 7 [Laws of 1929, chap. 305]), filed with the Superintendent of Insurance a bond executed by the General Indemnity Corporation of America as surety and International as principal. The principal amount of the bond was $112,000.   It was executed in favor of the People of the State of New York.   The terms of the bond read as follows:

" Now, Therefore, the condition of this bond is such that if the Principal shall pay in full any and all compensation and benefits accruing subsequent to January 5th, 1933, as provided in the Workmen's Compensation Law to any and all persons entitled thereto under any policy or contract of insurance issued by the Principal, then this obligation shall be void; otherwise to remain in full force and virtue.

" Provided Further, that upon the certificate of the Superintendent of Insurance that there has been default in the payment of compensation for thirty days or that the Principal has become insolvent, the Attorney General of the State of New York may enforce this bond in the name of The People of the State of New York for the benefit of any and all persons entitled to the compensation assured by any policy issued by the Principal or otherwise entitled to any benefits under such policy."

International became insolvent on April 19, 1933.   On August 16, 1933, the General Indemnity Corporation of America, surety on the bond, was judicially declared insolvent in this State and the Superintendent of Insurance was directed to liquidate its assets.   Because

of the insolvency of International, the Attorney-General of the State of New York appearing for the Industrial Commissioner of the State of New York filed a claim with the Superintendent of Insurance, as Liquidator of the General Indemnity Corporation of America, under the aforesaid qualifying bond. He claimed a priority of payment for the principal sum of the bond, on the ground that it was a claim of the State of New York and that, as such, it should be preferred over the claims of general creditors. The Superintendent of Insurance, on the other hand, has insisted that the claim is not entitled to any preference.

It is undoubtedly the rule in this jurisdiction that the State as the sovereign power has a preference over other creditors in insolvency proceedings. (*Marshall* v. *New York*, 254 U. S. 380; *Matter of Atlas Television Co.*, 273 N. Y. 51, 54; *Matter of Carnegie Trust Co.*, 206 id. 390.) The prerogative, however, is the right of the State alone and it is not available to its political subdivisions, such as a city. (*Matter of Northern Bank of New York*, 85 Misc. 594; affd. on opinion of Mr. Justice LEHMAN, 163 App. Div. 974; affd., 212 N. Y. 608.)

The purpose of the sovereign prerogative is to protect the revenue of the State and to insure against loss of governmental moneys, to meet the expenses of government and to discharge public debts and obligations of the State. (*Matter of Carnegie Trust Co.*, *supra; Matter of Atlas Television Co.*, *supra*, at p. 55; *Matter of Niederstein*, 154 App. Div. 238; *State ex rel. Rankin* v. *Madison State Bank*, 68 Mont. 342; 218 P. 652; *People ex rel. Nelson* v. *West Englewood Trust & Sav. Bank*, 353 Ill. 451; 187 N. E. 525; *Matter of Central Bank of Willcox*, 23 Ariz. 574; 205 P. 915; *Seay* v. *Bank of Rome*, 66 Ga. 609.)

Subdivision 7 of section 54, of the Workmen's Compensation Law does not relate to any indebtedness due to the State, but was enacted for the purpose of insuring " the payment in full of any and all compensation and benefits * * * to any and all persons entitled thereto under any such policy or contract of insurance."

Following the language of the statute, the bond of indemnity itself specifically provides that the Attorney-General may enforce it in the name of the People of the State of New York for the benefit of any and all persons entitled to compensation assured by any policy issued by the principal. Thus it will be observed that the State is merely acting as a trustee or as an agent for those persons who are entitled to the benefits. The bond does not assure to the State of New York the payment of any money for the State's own use. While the bond in form is for the benefit

of the People of the State of New York, the obligation thereunder actually runs to the compensation claimants, some or all of whom may not even be residents of this State.

It is clear that the claim under the bond could not result in bringing funds into the State for the support of its government and is, therefore, entitled to no right of priority of payment from the assets of the defunct company.

Moreover, subdivision 7 of section 54 of the Workmen's Compensation Law permits the carrier desiring to write compensation insurance in the State of New York, " in lieu of the bond required to be given " thereunder, to " deposit with the Superintendent of Insurance securities * * * equal to twenty-five per centum of the outstanding reserves for compensation losses on policies issued by such foreign stock corporation," and provides that in the event of default in payment of claims and the insolvency of the depositing company, the Superintendent of Insurance may sell such securities for payment of such losses.

Under this statute International had the right to deposit certain specified securities in the sum of $112,000 instead of furnishing the qualifying bond of the General Indemnity Corporation of America for that amount. If International had chosen this alternative and the entity issuing the securities had become insolvent, the Superintendent of Insurance clearly would be unable to claim a preference over private holders of such securities because he was acting as a State officer. Since the statute gave the carrier the right to deposit with the Superintendent of Insurance such securities in lieu of furnishing the qualifying bond, the rights under such qualifying bond cannot be any greater than the State would have had under securities deposited with the Superintendent.

For the foregoing reasons, we hold that the claim of the People of the State of New York, represented by the Industrial Commissioner of the State of New York, is not, in the circumstances of this case, entitled to a preference to the assets of the defunct surety company, but as recommended by the referee, it should be allowed as a general claim in the liquidation proceedings.

The order of Special Term should be reversed, with twenty dollars costs and disbursements, and the report of the referee recommending allowance of the claim as a general claim not entitled to priority is confirmed.

MARTIN, P. J., O'MALLEY and UNTERMYER, JJ., concur; DORE, J., dissents and votes to affirm.

DORE, J. (dissenting). This appeal presents the issue whether a claim made under a bond given pursuant to subdivision 7 of

section 54 of the Workmen's Compensation Law is entitled to preference and priority. In my opinion the learned Special Term correctly ruled that the court should seek the object and purpose of the parties in the language of their contract rather than in formulas applied in other cases. (*Brown* v. *Bedell*, 263 N. Y. 177.) The language of the contract is so clear and unambiguous as to preclude construction. By its terms the bond is "unto The People of the State of New York." On condition broken, the Attorney-General is authorized to enforce the bond "in the name of The People of the State of New York."

Appellant argues that we must not exalt the form above the substance; that in spirit and fact this bond is not a debt payable to the State acting in its capacity as sovereign but only as trustee for certain private compensation claimants, some of whom may not be citizens or residents of New York; and that the priority due to the sovereign is limited to cases where the debt sought to be collected is a public fund necessary for carrying out governmental functions or a claim for revenue wherewith to defray the expenses of government, such as taxes.

But the origin of the bond and its purpose indicate as clearly as its form that it was intended as a debt due to the People as sovereign. Only the sovereign could decree that before compensation insurance contracts of foreign insurers could have any valid inception in this State a bond must be filed. That condition the sovereign ordained pursuant to subdivision 7 of section 54. The General Indemnity, therefore, contracted with "The People" as sovereign, that if the State permitted International to issue workmen's compensation policies in New York, General Indemnity would pay to The People a sum certain if the condition of the bond was broken. The condition concededly was broken and the debt is due "to The People of the State of New York."

But there are other more fundamental considerations that show that this bond was intended to be a debt due to the State in its sovereign capacity. The interest of the State as a whole in the enactment of the Workmen's Compensation Law was indicated by our Court of Appeals in an opinion by MILLER, J., in which the court said: "This subject should be viewed in the light of modern conditions, not those under which the common-law doctrines were developed. With the change in industrial conditions, an opinion has gradually developed, which almost universally favors a more just and economical system of providing compensation for accidental injuries to employees as a substitute for wasteful and protracted damage suits, usually unjust in their results either to the employer

or the employee, and sometimes to both. Surely it is competent for the state in the promotion of the general welfare to require both employer and employee to yield something toward the establishment of a principle and plan of compensation for their mutual protection and advantage. Any plan devised by the wit of man may in exceptional cases work unjustly, but the act is to be judged by its general plan and scope and the general good to be promoted by it. Fortunately the courts have not attempted to define the limits of the police power. Its elasticity makes progress possible under a written constitution guaranteeing individual rights." (*Matter of Jensen* v. *Southern Pacific Co.*, 215 N. Y. 514, 528.)

The Supreme Court of the United States has characterized the Workmen's Compensation Law as " a reasonable exercise of the police power of the State " and held that " the matter of compensation for human life or limb lost or disability incurred in the course of hazardous employment " is one in which " the public has a direct interest * * * as affecting the common welfare." (*New York Central R. R. Co.* v. *White*, 243 U. S. 188, 206.)

By the enactment of the law the State as sovereign deprived workers and employees, solely by reason of their status as such, of the common-law right to sue in the courts on personal injury claims against their own employers. Simultaneously, not merely for the protection of private individuals but for protecting the " general welfare " (MILLER, J., in *Matter of Jensen* v. *Southern Pacific Co.*, *supra*), the People as sovereign gave to employees what was considered to be a better form of protection, namely, their rights under the Workmen's Compensation Law. This extraordinary and hitherto unprecedented exercise of the police power of the State would be futile unless the State, which as sovereign enacted the law, took means to achieve its ultimate purpose. The bond in issue was exacted to make assurance doubly sure that this purpose, viz., the ultimate payment of compensation claims, would not be frustrated. That in such enactment the State continued to act as sovereign does not seem unreasonable especially when the form of the bond required clearly indicates this fact.

Section 34 of the Workmen's Compensation Law provides that compensation claims are a lien upon the assets of the carrier and the employer " without limit of amount." In the case of foreign insurers to make payment certain a bond to the People and the State was required.

In addition, section 54 seeks to avoid charges upon the public that would inevitably follow if workmen's compensation claims in case of death and disability were not satisfied.

It is too narrow a construction to hold as contended that the priority of the sovereign is limited to claims for taxes and revenue. In *Marshall* v. *New York* (254 U. S. 380, 383) the Supreme Court of the United States said:

" The courts of New York decided that, by virtue of this constitutional provision, the State, as sovereign, succeeded to the crown's prerogative right of priority; and that the priority was not limited to amounts due for taxes, but extended alike to all debts due to the State * * *. This priority has been enforced by the courts of New York under a great variety of circumstances in an unbroken series of cases extending over more than half a century. It has been enforced as a right and not as a rule of administration.

" This priority arose and exists independently of any statute. The Legislature has never, in terms, limited its scope; and the courts have rejected as unsound every contention made that some statute before them for construction had, by implication, effected a repeal or abridgment of the priority. The only changes of the right made by statute have been by way of enlarging its scope in certain cases."

Construing this very bond the Court of Appeals has stated that subdivision 7 was added to section 54 " to protect, in the event of the insolvency of a foreign insurance carrier, all workmen and their dependents then or thereafter to be entitled to any compensation and benefits under policies issued by it." (*Matter of People [International Reinsurance Corp.]*, 271 N. Y. 381.)

It is no objection that the beneficent purposes of the act may possibly cover non-residents. The statute could not discriminate against non-resident employees without denying to the citizens of one State the privileges and immunities given to that of another. (*Matter of People [Southern Surety Co.]*, 266 N. Y. 589.)

The cases relied on by the Superintendent of Insurance are not controlling.

Both in its form and in its purpose the bond in question is a debt to the People of the State of New York and as such is entitled to priority. Accordingly, I dissent and vote to affirm the order.

Order reversed, with twenty dollars costs and disbursements, and report of referee recommending the allowance of the claim as a general claim not entitled to priority confirmed. Settle order on notice.