OPINION OF THE COURT
 

 Jasen, J.
 

 In this proceeding to settle the final account of an adjudicated incompetent, the issue presented is whether a claim by the New York State Department of Mental Hygiene for reimbursement of expenses incurred for the care and maintenance of an incompetent has priority over a claim by the New York City Health and Hospitals Corporation for reimbursement of such expenses.
 

 Esther Warren, an adjudicated incompetent, died at the Rockland Psychiatric Center in Orangeburg, New York, on June 24, 1977. Thereafter, her committee instituted the present proceeding pursuant to section 78.29 of the Mental Hygiene Law to have her account judicially settled and approved. At the time, the balance in the estate was $8,422.63. Claims were submitted by the New York State Department of Mental Hygiene (the “State”) and the New York City Health and Hospitals Corporation (the “City”). The State’s claim was for $6,991.76 and represented expenses incurred for the care and maintenance of Esther Warren at the Rockland Psychiatric Center for the period October 26, 1976 to June 23, 1977. The City’s claim was for $7,844.36 and represented the balance due for the institutional care provided to the incompetent at Bellevue Hospital from February 21, 1971 to July 2, 1971.
 
 *121
 
 Both claimants, asserting that they were preferred creditors, requested full reimbursement of the amounts expended on behalf of Esther Warren.
 

 Special Term, after allowing $2,943.89 for administrative and funeral expenses, ordered that the remaining balance in the estate of $5,478.74 be distributed to the claimants on a pro rata basis, with the State receiving $2,585.97 and the City receiving $2,892.77. Special Term rendered no opinion articulating its reasoning for this pro rata distribution. On appeal, a pnanimous Appellate Division affirmed Special Term’s order, without opinion, and granted both the State and the City leave to appeal.
 

 In this court, the State contends that, in its capacity as sovereign, it has a common-law prerogative right of priority which entitles it to full payment of its claim ahead of any amounts owing to the City. For its part, the City, relying on its statutory preference under section 104 of the Social Services Law, asserts that its claim has priority over that of the State. Alternatively, the City contends that, at the very least, its statutory preference under the Social Services Law entitles it to share pro rata with the State in the distribution of the incompetent’s estate. We agree with the position advanced by the State.
 

 At early common law, the Crown of Great Britain enjoyed a prerogative right over its subjects which entitled it to priority in the payment of the debts owed to it from the assets of an insolvent debtor. This prerogative right could only be defeated by the passing of title to a creditor, either absolutely or by the procurement of a lien, before the sovereign sought to enforce its claim against the debtor. (See
 
 Giles v
 
 Grover, 9 Bing 128;
 
 Matter of Henley & Co.,
 
 9 Ch D 469.) Of course, we are no longer governed by the Crown. However, by virtue of section 35 of our Constitution of 1777, the common law of England was adopted by New York and the State, as sovereign, thereby succeeded to the Crown’s prerogative right of priority.
 
 (Marshall v New York,
 
 254 US 380;
 
 Matter of Gruner,
 
 295 NY 510;
 
 Matter of Carnegie Trust Co.,
 
 206 NY 390.) Moreover, under our present Constitution, the State of New York continues to enjoy this common-law preference. (NY Const, art I, § 14.)
 
 *122
 
 The purpose of this prerogative right to priority “is to protect the revenue of the State and to insure against loss of governmental moneys, to meet the expenses of government and to discharge public debts and obligations of the State.”
 
 (Matter of General Ind. Corp. of Amer.,
 
 251 App Div 236, 238, affd 275 NY 616; see
 
 Matter of Atlas Tel. Co.,
 
 273 NY 51, 55; see, generally, State’s Prerogative Right of Preference at Common Law, Ann., 51 ALR 1355.)
 

 It is a well-established rule of construction that “a statute does not apply to the State, where its sovereign rights, prerogatives, or interests are involved, unless it is specifically mentioned therein or included by necessary implication.” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 115.) The State Department of Mental Hygiene and its Office of Mental Health act in a sovereign capacity in providing care for the mentally ill. (Mental Hygiene Law, § 7.01.) Moreover, in contrast to common law, the Department of Mental Hygiene is now authorized by statute to recover amounts paid to the recipients of public assistance. (Mental Hygiene Law, art 43; see
 
 Baker v Sterling,
 
 39 NY2d 397.) Hence, in order to establish that its claim against the estate of Esther Warren has priority over that of the State, the City must point to some clear expression from the Legislature which evinces an intent on the part of that body to abrogate the State’s common-law prerogative right with respect to the reimbursement of funds expended for public assistance. This the City is unable to do.
 

 In support of its claim to priority, the City relies on subdivision 1 of section 104 of the Social Services Law. That statute provides that, in recovering amounts paid to the recipients of public assistance, “the public welfare official shall be deemed a preferred creditor.” This statute was enacted in order to provide the City with a preference over the “general creditors” of a recipient of public assistance. (See NY Legis Ann, 1964, p 322.) However, there is no express language in section 104 of the Social Services Law nor anything in its legislative history which indicates that the Legislature intended this statutory preference to be in derogation of the State’s common-law prerogative right. Thus, section 104 of the Social Services Law, standing alone,
 
 *123
 
 does not provide the basis for placing the City ahead of the State in the collection of moneys expended for public assistance.
 

 Nor does the City’s reliance on the Mental Hygiene Law serve to alter this result. Under the predecessor statute to the current Mental Hygiene Law, the State was deemed a preferred creditor in regard to its claims against a public welfare recipient. (See Mental Hygiene Law, former § 39.) When this statute was recodified in its present form under article 43 of the Mental Hygiene Law (L 1972, ch 251), reference to the State’s preferred creditor status inexplicably was omitted. Once again, however, there is no mention made in the statute or in any of its legislative history which indicates that the State’s common-law right of priority thereby was abolished. As such, we are unable to glean from this unexplained deletion of the State’s statutory preference from the Mental Hygiene Law a purpose on the part of the Legislature to revoke the State’s prerogative right to priority.
 

 In sum, the State, in recovering amounts expended for public assistance, continues to enjoy its prerogative right of preference which is superior to any statutory right conferred upon the City under the Social Services Law. Nor has the State’s common-law preference been abrogated, either expressly or by necessary implication, as a result of any of the statutory amendments relied upon by the City.
 

 Accordingly, the order of the Appellate Division should be modified, without costs, to the extent of providing that the net estate of the deceased incompetent be distributed to New York State Department of Mental Hygiene and, as so modified, the order should be affirmed.
 

 Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
 

 Order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.