OPINION OF THE COURT
Bernard L. Reagan, S.
Zoe E. Pierce, also known as Zoe Elva Pierce, hereinafter referred to as the “decedent”, died testate on December 13, 1982, a resident of the State of New York, County of Onondaga.
At the time of the decedent’s death she had been a patient at Crouse-Irving Memorial Hospital, Syracuse, New York, hereinafter referred to as the “hospital”, from July 9, 1981 through November 8,1982, which resulted in unpaid hospital charges in excess of $29,000.
As a result of the decedent’s nonpayment of her hospital charges, the hospital obtained two judgments against the decedent during her lifetime. The first judgment was entered and docketed on December 11, 1981, which has a present balance due and owing of $4,671.84. The second judgment was entered and docketed March 31, 1982, the present outstanding balance is $19,929.73. Following the entry of the second judgment on March 31, 1982, the decedent incurred additional hospital charges totaling $5,740.40.
*909 At present the hospital has judgments against the decedent totaling $24,601.57, and remains an unsecured creditor in the amount of $5,740.40.
The Onondaga County Department of Social Services has filed a claim against the estate of the decedent in the amount of $59,332.20. The claim represents amounts paid to the decedent prior to her death for assistance and care.
On October 27, 1983, the executor filed a petition for judicial settlement which reflected total gross assets of the estate in the amount of $33,515.46.
The claims filed by the hospital, Department of Social Services and others exceed the total assets of the estate by many thousands of dollars.
The sole question for the court to decide is the order of priority that the debts are to be paid, or put in its simplest form, is the money to be paid to the judgment creditor (hospital) or the Department of Social Services.
No cases in point have been cited by either the attorney for the hospital or the attorney for the Department of Social Services. The late Paul J. Powers in his Practice Commentary (McKinney’s Cons Laws of NY, Book 58A, SCPA 1811, p 202) in 1967 stated, “The welfare preference is too new to have generated any litigation with the State.” Although 17 years have passed this seems to be the situation today.
Schedule a of the executor’s accounting reveals total gross assets of $33,085.57, of this amount, $20,000 consists of real property and $13,085.87 in personal property.
In brief, the hospital claims as a judgment creditor it is entitled to priority as a “preferred” creditor against the real property in the amount of $20,000 and an unsecured creditor for the balance of its debt.
The Onondaga County Department of Social Services claims subdivision 2 of section 1811 of the SCPA mandates the order of priority in which a decedent’s debts shall be paid, and the statutes give an absolute preference to claims for reimbursement of public assistance over any other creditor without regard to the status of the creditor’s claim.
*910 The pertinent sections of the law that the court looks to are set forth below:
Section 1811 of the SCPA provides in pertinent part:
“1. The reasonable funeral expenses of the decedent subject to the payment of expenses of administration shall be preferred to all debts and claims against his estate and shall be paid out of the first moneys received by his fiduciary.
“2. Every fiduciary must proceed with diligence to pay the debts of the decedent according to the following order:
“(a) Debts entitled to a preference under the laws of the United States and the State of New York.
“(b) Taxes assessed on property of the deceased previous to his death. Any taxes so paid by a fiduciary on real property which descends to a distributee or passes to a devisee shall be a charge thereon for which the beneficiary must reimburse the estate unless in the case of wills the testator has indicated expressly or by necessary implications that such taxes be otherwise paid.
“(c) Judgments docketed and decrees entered against the decedent according to the priority thereof respectively.” Section 104 of the Social Services Law provides in pertinent part:
“1. A public welfare official may bring action or proceeding against a person discovered to have real or personal property, or against the estate or the executors, administrators and successors in interest of a person who dies leaving real or personal property * * * and shall be entitled to recover up to the value of such property the cost of such assistance or care * * *
“In all claims of the public welfare official made under this section the public welfare official shall be deemed a preferred creditor.”
CPLR 5203 in pertinent part: “(a) Priority and lien on docketing judgment. No transfer of an interest of the judgment debtor in real property, against which property a money judgment may be enforced, is effective against the judgment creditor either from the time of the docketing of the judgment with the clerk of the county in which the property is located until ten years after filing of the judgment-roll”.
*911 Section 369 of the Social Services Law provides in pertinent part (enacted by the State of New York to comply with the requirements of Federal law [US Code, tit 42, § 1396p, subd (a), par (1), cl (A)):
“1. All provisions of this chapter not inconsistent with this title shall be applicable to medical assistance for needy persons and the administration thereof by the public welfare districts. Any inconsistent provision of this chapter or other law notwithstanding,
“(a) no lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under this title, except pursuant to the judgment of a court on account of benefits incorrectly paid on behalf of such individual”.
In summary the Department of Social Services claims:
(A) Section 14 of article I of the New York Constitution gives the State common-law prerogative over rights of its subjects which entitles it to a priority in payment of debts owed (Matter of Warren, 53 NY2d 118).
(B) After the death of a judgment debtor an execution upon a money judgment shall not be levied except upon leave of the Surrogate’s Court (CPLR 5208).
(C) The Surrogate in determining what creditors are to be paid is bound by SCPA 1811.
(D) SCPA 1811 (subd 2, par [a]) gives debts entitled to a preference under the laws of the United States and State of New York priority over judgment creditors.
(E) Subdivision 1 of section 104 of the Social Services Law gives all claims of the public welfare official preferred status.
Both parties agree that funeral and administration expenses are first, but the Department of Social Services claims that a plain reading of SCPA 1811 and subdivision 1 of section 104 of the Social Services Law can lead to no other conclusion than that it has priority over the hospital. It cites Matter of Ciappei (159 Misc 438) as a case on all fours substantiating its position.
The hospital claims the Department of Social Services is reading something into SCPA 1811 and subdivision 1 of section 104 of the Social Services Law which is not there.
*912 Its position is that its judgments, once filed prior to the death of the decedent, became a lien upon the real property of the judgment debtor. The legal effect of this statutory rule is that from the moment a judgment is duly filed and docketed legal rights in the re'al estate of the debtor attach.
The court agrees with this position. The reliance that the Department of Social Services puts on Matter of Ciappei (159 Misc 438, supra) is also misplaced.
It is not necessary to, after filing a judgment, issue an execution in order for a lien to attach to real estate. The Department of Social Services has assumed in citing Matter of Ciappei (supra) that the rule prevailing as to the acquisition of a lien upon personal property also prevails as to real property. The statute (CPLR 5203) removes any doubt on this point and clearly states the lien attaches as to land from the filing of the judgment (Hulbert v Hulbert, 216 NY 430). In the Ciappei case the argument was over personal property, and not real property.
The court finds that when the hospital filed its judgment prior to the death of the decedent, and prior to the filing of the claims of the Department of Social Services, that said judgments became a specific lien on the decedent’s real estate.
“Thus, while by the common law of England, The King (in aid of Braddock) v. Watson, 3 Price, 6, and by that of New York, Wise v. L. & C. Wise Co., 153 N. Y. 507, 511, the priority does not obtain over a specific lien created by the debtor before the sovereign undertakes to enforce its right”. (Matter of Gruner, 295 NY 510, 523.)
Subdivision 1 of section 104 of the Social Services Law grants a “public welfare official” the power to bring proceedings to recover “up to the value of such property the cost of such assistance or care” (Matter of Clonan, 176 Misc 557). The value the decedent has in her real property is reduced by the amount of the judgment which is a specific lien on said real property.
The decedent’s real property in the case at bar is worth $20,000, reduced by the amount of the hospital lien of $24,601.57, leaving no actual value in said property to be recovered by the Department of Social Services.