OPINION OF THE COURT
W. Patrick Falvey, S.
Petitioner executrix brings this matter by petition for judicial settlement and account of the proceedings in the estate of *520 the above-mentioned decedent for the period August 2, 1984 to May 27, 1990.
The petitioner has requested that the court approve and allow the payment from the cash remaining on hand certain legal fees and expenses, executrix’s commissions and guardian ad litem allowance with payment of the balance to the creditors of the decedent’s estate.
The parties, through their counsel, executed a stipulation in counterparts which consents to the awarding of the sum $13,421.50 to Harris, Beach & Wilcox as legal fees and disbursements on behalf of the attorneys for the various beneficiaries of the estates of Harold Brown and Lauren Hanmer; the sum of $10,421 plus reasonable disbursements to Nixon, Hargrave, Devans & Doyle, in addition to any previous payments to said law firm shown in the account, as attorneys for the executrix; the sum of $10,761.01 to the executrix, as and for the commissions to which she is entitled in this proceeding and an allowance, as the court determines, to Justin H. Corcoran, Esq., guardian ad litem for Helen Thill.
The sole issue before this court concerns the appropriate disposition of the estate funds remaining after payment of the above-mentioned unpaid administration expenses. More specifically, the question is whether or not all the decedent’s creditors, who are unsecured, are entitled to share equally in the funds remaining on hand or is the Lawyers’ Fund for Client Protection of the State of New York (hereinafter referred to as Fund) entitled to the status of a preferred creditor over all other unsecured creditors of the estate?
It is clear from review of the final account that after allowing for administration and funeral expenses the balance remaining in the estate, i.e., $59,409.30, will not satisfy the total of the above-mentioned unpaid administration fees, unpaid bills, claims for payments, exclusive of any accrued interest, by the Fund, and the claims of the individually aggrieved parties for interest on the misappropriated funds.
The account indicates that a total of $371,500 in claims were paid by the Fund, exclusive of interest, to 46 beneficiaries of six estates. These payments resulted from the court’s earlier decrees that these funds were wrongfully misappropriated by the decedent while he served as executor and attorney for said estates. The court ordered that the persons and charitable organizations having a beneficial interest in those estates be reimbursed for their share of the misappropriated *521 funds plus interest. Pursuant to the decrees the executrix was authorized to make claims to the Fund seeking reimbursement for losses resulting from the decedent’s misappropriations. The decrees also provided that the Fund would have a claim against the decedent’s estate for any amounts of reimbursement that the Board of Trustees of the Fund allowed these estates as their rights and causes of action to the extent of any payments received were transferred to the Fund.
The Fund claims that it is an arm of the State and therefore the State should be given a preference as it is the State’s sovereign right to priority over other unsecured creditors.
According to common law and as codified in the NY Constitution, the State in its capacity as sovereign has a prerogative right to priority over other general creditors with regard to the estate or the property of a debtor. (See, NY Const, art I, § 14.) The court has previously applied this preference by declaring that the State in recovering amounts expended for public assistance has a right superior to any statutory right of reimbursement conferred upon a city under the Social Services Law. (Matter of Warren, 53 NY2d 118; Matter of Canfield, 126 Misc 2d 900.)
The Fund is a governmental agency created by the State Legislature in 1981 (L 1981, ch 714). The purpose of the Fund is to promote public confidence in the administration of justice and the integrity of the legal profession by reimbursing losses caused by the dishonest conduct of members of the New York Bar (Clients’ Sec. Fund v Grandeau, 72 NY2d 62; see also, Judiciary Law § 468-b; 22 NYCRR 7200.1). In addition, the Fund is a special fund of the State with its assets in the custody of the State Comptroller. (State Finance Law §§ 70, 97-t [1].)
The Fund is financed primarily from a biennial registration fee imposed, with certain exceptions, upon all attorneys in New York. (Judiciary Law § 468-a; State Finance Law § 97-t [2].) Losses are determined by the Fund’s trustees and all payments from the Fund are made by the State Comptroller on vouchers certified by the Fund’s chair and treasurer. (22 NYCRR 7200.13.)
Therefore, as in Matter of Warren (supra), the same reasoning applies in the case at bar and the court finds that the Fund is entitled to a priority over all other unsecured creditors of the decedent’s estate.
The court awards $300 to Justin H. Corcoran, Esq., for his *522 services as guardian ad litem for Helen Thill to be paid by the executrix from the estate proceeds presently on hand. Reasonable expenses of Nixon, Hargrave, Devans & Doyle are awarded upon presentation of proof of same to the court.
The balance of the net proceeds, after payment of all the above-ordered or stipulated administration costs and expenses, will be paid by the executrix to the Lawyers’ Fund for Client Protection of the State of New York to be applied against any moneys previously paid by the Fund to the subrogated estates.
Counsel for the Lawyers’ Fund for Client Protection of the State of New York to submit order.